UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

Eastern Division

| | | |
|---|---|---|
| In Re: | ) | Case Number: 22-14513 |
| MANCUSO MOTORSPORTS, INC., | ) | |
| | ) | |
| | ) | Chapter: 11 |
| | ) | |
| | ) | Honorable Donald R. Cassling |
| | ) | |
| Debtor(s) | ) | |

## ORDER CONFIRMING DEBTOR'S
## FIRST AMENDED PLAN OF REORGANIZATION

THIS MATTER COMING TO BE HEARD on Confirmation of the Debtor's First Amended Plan of Reorganization ("Plan"), due notice having been given to all parties entitled thereto, no objections having been received, and the Court being fully advised in the premises:

The Court hereby finds that the requirements for confirmation as set forth in Section 1191 of the United States Bankruptcy Code have been satisfied; accordingly

IT IS HEREBY ORDERED that the Plan, a copy of which is attached hereto as Exhibit A, is hereby confirmed as modified as follows:

Paragraph 15.11  Exculpation Release: shall be modified to exclude employees, advisors, affiliates and subsidiaries.

A post confirmation status hearing will be held on January 30, 2024 at 10:00 a.m. in Courtroom 619, 219 S. Dearborn St, Chicago, IL 60604, or through Zoom for Government – Judge Cassling.

Enter: *Donald R. Cassling*

Honorable Donald R. Cassling
United States Bankruptcy Judge

Dated: **November 8, 2023**

**Prepared by:**
DEBTOR'S COUNSEL
Scott R. Clar
(Atty. No. 06183741)
CRANE, SIMON, CLAR & GOODMAN
135 S. LaSalle, #3950
Chicago, IL 60603
(312) 641-6777
sclar@cranesimon.com

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 22-14513 |
| MANCUSO MOTORSPORTS, INC. | ) | |
| | ) | Hon. Donald R. Cassling |
| Debtor/Debtor-in-Possession. | ) | |
| | ) | Subchapter V Chapter 11 |

## **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

Mancuso Motorsports, Inc., debtor/debtor-in-possession ("Debtor"), proposes the following First Amended Plan of Reorganization ("Plan") in accordance with Sections 1189 and 1190 of the United States Bankruptcy Code ("Bankruptcy Code").[1]

## **HISTORY OF THE BUSINESS**

On December 16, 2022, the Debtor filed its voluntary petition for relief under Subchapter V Chapter 11 of the Bankruptcy Code.  The Debtor is an Illinois corporation operating from 3124 W. Lake Ave., Glenview, IL 60026.[2]  The Debtor intends to reject the lease for the 3124 location and is engaged in moving its operations to 3120 W. Lake, Glenview, Illinois (the "3120 Property").  The 3120 Property is solely owned by Ryan Daube, an insider and 3120 LLC has an unsecured claim of $630,768.85, which claim will not be paid under the Plan, leaving approximately $279,000 of unsecured claims, all of which will be paid 100% plus interest at the rate of 7%  on the Effective Date, out of funds

---

[1]  The amendments mainly consist of changes brought about by the Debtor's entering into a settlement agreement with shareholders Frank Roti, Rob Mancuso, Owen Schnaper and a non-shareholder entity Northshore Motorsports, Inc.

[2]  The Debtor entered into a Lease Agreement with 3124 W. Lake Avenue LLC ("3124 LLC"), as landlord and the Debtor as tenant, dated July 3, 2018, with an expiration date of June 30, 2038 (the "3124 Lease"). The time for the Debtor to reject the 3124 Lease has been extended to Confirmation.

provided by the Debtor's majority shareholder, Ryan Daube ("Daube").  As of the approval of the Settlement Agreement attached hereto as **Exhibit A**, Daube, and/or his trusts or entities will be sole shareholder of the Debtor.

The Debtor is a Glenview, Illinois-based auto collision and custom auto repair center, but once also operated a luxury used sports car dealership and was incorporated in Illinois.  Mancuso Motorsports Inc, opened its doors in May of 2012 with a single location in Chicago operating a new car franchise of Lotus Cars Limited, a luxury sports brand.

During 2018, two new shareholders were added to the Debtor's equity structure, Daube and Owen Schnaper.  Later, during 2019, an auto collision center, formerly known as Auto Art,  was purchased.  The impetus for the collision center acquisition was to recondition vehicles to then be sold through the Mancuso Motorsports sales channel.

Business came to a standstill during March of 2020 as the world shut down at the onset of the worldwide pandemic.  During the height of the COVID pandemic, $2.485mm was infused into the business to cure floor plan defects.  Eventually, the Debtor ceased doing business as a dealership location in Chicago, and relinquished the Lotus franchise. Currently the debtor operates only the auto collision center in Glenview and is in the process of moving all operations to 3120 W Lake Ave.

### LITIGATION AND SUBSEQUENT SETTLEMENT WITH
### ROTI, MANCUSO, NORTHSHORE AND OTHERS

Prior to and after the Petition Date, the Debtor has been engaged in litigation with shareholders Francis Roti (Roti"), Rob Mancuso ("Mancuso") and Northshore Autosports, Inc., a Roti owned and controlled company ("Northshore"), which litigation has been resolved.

The Debtor's current shareholders are Ryan Daube (and/or his trust) ("Daube"), Francis Roti ("Roti"), Rob Mancuso ("Mancuso"), and Owen Schnaper ("Schnaper"). Daube is the majority shareholder. Daube, Roti, Mancuso, and Owens Army, LLC are members of 3124 W. Lake Avenue LLC ("3124"), which owns the current business premises of the Debtor.

In June 2018, the Debtor, the Daube Trust, Roti, Mancuso and Schnaper entered into a Shareholders Agreement, which was amended on April 1, 2020, pursuant to a First Amendment to Shareholders Agreement (collectively, "Shareholders Agreement").

On December 27, 2021, the Debtor filed a Complaint against Roti, Mancuso, Northshore, and an entity known as O'Hare Autobody, Ltd. in the Circuit Court of Lake County, Illinois, County Department, Law Division, captioned *Mancuso Motorsports, Inc., an Illinois corporation v. Francis Roti, an individual, Robert P. Mancuso, an individual, Northshore Autosport, Inc., a Wisconsin and Illinois corporation ("Northshore"), and O'Hare Auto Body, Ltd., an Illinois corporation*, Case No. 21L0000924 (the "Lawsuit").

On September 12, 2022, the Debtor recorded a Notice of Lien in the amount of $178,586.67, as Document No. 2225522005 (the "Storage Lien"), against vehicles and other property of Northshore, which are the subject of a replevin proceeding.

On November 23, 2022, the Debtor filed a Demand for Arbitration against Roti, Mancuso, and Northshore with ADR systems, Inc., captioned *Mancuso Motorsports, Inc., an Illinois corporation v. Francis Roti, an individual, Robert P. Mancuso, an individual, and Northshore Autosport, Inc., a Wisconsin and Illinois corporation,* ADR No. 58374CAJH (the "Arbitration Proceeding").

On February 22, 2023, Mancuso filed a Proof of Claim ("Claim No. 3") in the amount of $118,226.53 ("Mancuso's Proof of Claim") in the Bankruptcy Proceeding; and the Debtor has filed an objection to Mancuso's Proof of Claim.

On February 24, 2023, Roti filed a Proof of Claim (Claim No. 4-1) in the amount of $10,000.00 (amended on May 10, 2023 – Claim No. 4-2) and a Proof of Claim (Claim No. 5-1) in the amount of $20,000.00 (collectively "Roti's Proof(s) of Claim") in the Bankruptcy Proceeding; and the Debtor has filed an Objection to only Roti's Proof of Claim No(s). 401 and 4-2.

Among the relevant terms of the settlement between the Debtor, Roti, Mancuso, Northshore and others are:

A.      The Lawsuit and Arbitration will be dismissed and mutual releases between the parties will be executed;

B.      Parties other than the Debtor, associated with Daube, will pay Roti, Mancuso, Northshore and Schnaper the sum of $250,000;

C.      The Debtor will deliver a fully completed release of the Storage Lien;

D.      The Debtor will deliver possession of five (5) vehicles to Roti free and clear of all liens and encumbrances placed on such vehicles by the Debtor;

E.      The Debtor will file Articles of Amendment with the Illinois Secretary of State changing the name of the Debtor to Superior Collision and the Debtor will not use the name Mancuso Motorsports, or any derivative or variation thereof;

F.      The Debtor will remove the name Mancuso from the Debtor's property and will as promptly as possible cause the name Mancuso to be stricken from its website, domain names, email addresses and all other advertisements;

G.      All rejection claims and unsecured pre-petition claims of 3124 are  waived;

H.      Roti and Mancuso will waive all of their claims.

I.      Roti, Mancuso and Schnaper will sign, transfer and convey to Daube or his designee, all of the shares of stock owned by each in the Debtor, free and clear of all liens and encumbrances.

J.      Roti, Mancuso and Owens Army, LLC will sign, transfer and convey all membership interests owned by each in 3124 to Daube or his designee free and clear of all liens and encumbrances.

K.      Roti, Mancuso, Northshore and Schnaper agree that they will waive any and all objections to the Debtor's plan of reorganization, whether currently filed or that could be filed in the future, rendering the Debtor's plan consensual.


## <u>DEBTOR'S CURRENT ASSETS AND FUTURE MANAGEMENT</u>

The Chief Financial Officer and Chief Operating Officer is and will continue to be Jackie Cahan.

The Debtor, as of the Petition Date, held bank accounts totaling approximately $44,362, accounts receivable of $135,560, and inventory valued at approximately $50,070 at cost.  The Debtor's bank account now holds approximately $400,000, its accounts receivable total approximately $246,000 and inventory is approximately $101,000 at cost.  The Debtor continues to build its cash, receivables and inventory position.  Copies of the Debtor's monthly operating reports are attached hereto as **Group Exhibit B**.

The Debtor currently has nineteen (19) employees.

During the Chapter 11 case, the Debtor has worked jointly with the trustee in preparing and proposing this Plan.  Since the plan provides for a 100% distribution of all allowed claims plus interest at the rate of 7% on the Effective Date, voting has been deemed unnecessary.

The Debtor is the proponent of the Plan.  The Plan provides for 100% distribution plus interest to creditors with Allowed Claims from funds realized from the continued operations of the business by the Debtor, and a $1 million cash infusion by Ryan Daube, a 67.5% shareholder of the Debtor (the "Daube Capital Contribution"), some of which will be used to fund operations going forward[3].   Daube and various of his entities and trusts are also secured creditors of the Debtor in the approximate amount of $10 million and are waiving their rights to recover any distributions under the Plan, but not waiving their rights to distribution in perpetuity.   After Confirmation, the Debtor will emerge renamed as Superior Collision Custom, LLC (the "Reorganized Debtor").   As a result of the Agreement, Daube, and/or his entities or trusts will be the sole member of the Reorganized Debtor.

The Debtor has prepared cashflow projections to support the Plan, are unnecessary, given funding of the Plan is currently in escrow, and the Debtor has enough cash in its bank account to fund distributions under the Plan.

### ARTICLE I
### DEFINITIONS

The following terms, when used herein, shall have the meaning specified below, unless the context otherwise requires:

1.1    3120 Unsecured Claim:  The Allowed Insider $630,768.85 Claim of 3120 LLC, and entity solely owned and/or controlled by Daube, which will not share in distributions under the Plan.

---

[3] A copy of the Escrow Agreement between Ryan Daube and SWK Attorneys, the Escrow Agent, setting up an escrow for the Daube Capital Contribution is attached hereto as **Exhibit C**.

1.2    <u>Administrative Expense</u>:    A cost or expense of administration of this Chapter 11 proceeding, including any actual, necessary expense of preserving or liquidating the estate, or of operating the business of the Debtor and all allowances approved by the Bankruptcy Court in accordance with Section 503 of the Bankruptcy Code.

1.3    <u>Agreement</u>:    The Settlement Agreement approved by this Court on September 26, 2023, between the Debtor, Roti, Mancuso, Northshore, Schnaper and others.

1.4    <u>Allowed Claim</u>:    A "Claim" (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes, and with respect to which no objection has been timely filed by any party in interest, or (ii) that has been, or hereafter is, listed by the Debtor as liquidated in amount and not disputed or contingent, or (iii) that has been allowed by a "Final Order" (as defined below) by the Bankruptcy Court, or (iv) that is allowed by the provisions of this Plan.

1.5    <u>Allowed Interest</u>:    An "Interest" (as defined below) (i) proof of which has been filed with the Bankruptcy Court within the time fixed by the Bankruptcy Court or applicable rules or statutes; or (ii) that has been scheduled in the list of equity security holders prepared and filed with the Bankruptcy Court; and (iii) in the event of either (i) or (ii), as to which no objection to the allowance thereof has been filed within any applicable period of time fixed by an order of the Bankruptcy Court, or as to which any such objection has been determined by a Final Order of the Bankruptcy Court.

1.6    Arbitration:  The arbitration proceeding between the Debtor, Rob Mancuso and Roti currently pending before Arbitration Judge McGrath as no. ADR No. 5837CAJH, arising out of the State Court Litigation.

1.7    Bankruptcy Code:  Title 11 of the United States Code, Section 101 et seq., as amended.

1.8    Bankruptcy Court:  The United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

1.9    Bankruptcy Rules:  The Federal Rules of Bankruptcy Procedure.

1.10   Bank:  Byline Bank, the Debtor's first position secured lender.

1.11   Chapter 11:  Chapter 11 of the Bankruptcy Code.

1.12   Claim:  The term "Claim" shall have the meaning set forth in Section 101(5) of the Bankruptcy Code.

1.13   Class:  "Class" means a category of holders of Claims or Interests as set forth in Article II of the Plan.

1.14   Confirmation:   The entry by the Bankruptcy Court of a Final Order confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.15   Daube:  Ryan Daube, a 67.5% shareholder of the Debtor who loaned the Debtor over $10 million funds prior to the Petition Date, through his trust and other business entities and is a secured creditor of the Debtor for a sum in excess of $10 million. As a result of the Agreement, Daube or his designee will be the sole shareholder of the Reorganized Debtor.

1.16   <u>Daube Capital Contribution</u>:   Approximately $1 million of new value contributed by Daube, and/or his related entities or Trust to the Debtor to fund the Plan consisting of amounts currently held in collateral pledge accounts for the benefit of the Bank of approximately $287,000, plus $750,000 in cash.

1.17   <u>Daube Secured Claims</u>:   The insider secured claims of DFK Direct ($1,000,000), DFK Direct Group ($429,615.00); DFK Direct Investments ($2,991,656), Ryan Daube Trust ($7,728,650), and Ryan Daube ($4,689,305).

1.18   <u>Debtor</u>: Mancuso Motorsports, Inc., an Illinois corporation.

1.19   <u>Debtor's Estate</u>:  All of the Debtor's "property of the estate" as defined in Section 541 of the Bankruptcy Code.

1.20   <u>Debtor-in-Possession</u>: Mancuso Motorsports, Inc., an Illinois corporation .

1.21   <u>Effective Date</u>:  Effective Date shall be July 31, 2023,  or the first day of the first month following the entry of a Final Order confirming the Plan, whichever is later.

1.22   <u>Final Order</u>:  (i) an order or a judgment that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek re-argument, reconsideration or rehearing has expired and has not been extended and as to which no appeal, petition for certiorari, re-argument, reconsideration or rehearing is pending, or (ii) an order or a judgment for which an appeal, re-argument, reconsideration, rehearing or certiorari has been sought, and as to which the order or judgment has been affirmed or the request for re-argument, reconsideration, rehearing or certiorari has been denied, and the time to take any further appeal, re-argument, reconsideration, rehearing or certiorari has expired, so that in the event of either (i) or (ii), such order or judgment shall have become final and non-appealable in accordance with applicable law.

1.23     Insider: The term "Insider" shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

1.24     Interest:  Any equity interest held by any shareholder of the Debtor.

1.25     Lien: The term "Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code.

1.26     Month:  A calendar month, including the month in which a date or event occurs.

1.27     Northshore:  Northshore Motorsports, Inc., an entity purportedly owned and controlled by Roti.

1.28     Plan:   This Plan of Reorganization including any amendments or modifications thereto.

1.29     Reorganized Debtor:  Superior Collision Custom, LLC.

1.30     Rob Mancuso:  Rob Mancuso is a minority shareholder of the Debtor, and from May 2012 to  March 2020 was in charge of the Debtor's operations along with Francis Roti and is a defendant in the State Court Litigation.

1.31     Naming Agreement:   Name Use Rights Agreement by and between Mancuso Motorsports, Inc d/b/a Auto Art by Mancuso, an Illinois corporation, and Rob Mancuso, which will be rejected by the Debtor.

1.32     Roti:  Roti is Francis Roti, a shareholder of the Debtor, and from July 2013 to March 2020 exercised control of the Debtor's operations with Rob Mancuso and is a defendant in the State Court Litigation.

1.33     Secured Claim: The portion of any Claim, determined in accordance with Section 506(a) of the Bankruptcy Code, as of the date of Confirmation, which is (a)

secured by a valid, perfected and unavoidable Lien on property, arising by contract, operation of law, or otherwise to the extent of the value of the creditor's interest in the Debtor's interest in such property or (b) subject to offset.

1.34    Security Interest: The term "Security Interest" shall have the meaning set forth in Section 101(51) of the Bankruptcy Code.

1.35    State Court Litigation:  State Court means litigation initiated by the Debtor against Rob Mancuso and Roti, known as *Mancuso Motorsports, Inc. v. Roti, et al.*: case no. 21 L 00000924 in the Circuit Court of Lake County.

1.36    Superior Collision Custom Inc. :  The corporate name of the Debtor after Confirmation.

1.37    Tax Claim: Any Claim of a governmental unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.38    Unsecured Claim: Any Claim that is not an Administrative Claim, Wage Claim, Tax Claim, Assumed Lease Claim, or Secured Claim.

Unless otherwise defined, the words and phrases used herein shall have the meanings ascribed in the Bankruptcy Code and in the Bankruptcy Rules.

## ARTICLE II
## CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

2.1    **Administrative Claims**

Administrative Claims are unclassified and unimpaired and primarily consist of Allowed Claims comprised of fees and expenses of the professionals employed pursuant to Orders entered by the Bankruptcy Court and will be paid in full to the extent allowed. Those professionals consist of the firm of Crane, Simon, Clar & Goodman, bankruptcy

counsel for the Debtor, and Robert Handler, the appointed Subchapter V Trustee[4].  Total fees for professionals to be paid under the Plan are estimated to be in the approximate amount of $50,000.[5] Said sums will be paid out of the Daube Capital Contribution in cash in full thirty (30) days  after the Effective Date of the Plan, upon application to the Court and approval of those fees.

Also included in the category of Administrative Claims are post-petition trade payables.  Post-petition trade payables will be paid in the ordinary course of business pursuant to the credit terms existing at the time the claim was incurred.

### 2.2   **Wage Claims**

Wages Claims are unclassified and unimpaired under the Plan and consist of Allowed Claims for wages entitled to priority under Section 507(a)(4) of the Bankruptcy Code.  All Allowed Wage Claims, if any, will be paid in full, in cash, by the Effective Date of the Plan unless otherwise agreed by the holder of such Claim. The Debtor is unaware of any Wage Claims.

### 2.3   **Tax Claims**

Tax Claims are those entitled to priority under Section 507(a)(8) of the Bankruptcy Code.  The Tax Claims, if any, are unclassified and will be paid in full, in cash with interest as allowed by statute after payment of Administrative Claims and Wage Claims.    The Debtor believes that there are no Tax Claims.

---

[4] The Debtor has also employed the law firm of Gould & Ratner LP ("G&R") as special counsel to pursue the State Court Litigation and the Arbitration.  Daube has agreed to pay G&R's fees.
[5] Crane, Simon, Clar & Goodman received a pre-petition advance payment retainer in the amount of $29,956, applied for and received additional  interim compensation in the amount of $10,335.99 and currently has a second motion for interim compensation pending in the amount of $38,376.00, and expenses of  $204.35,  The Debtor estimates the Subchapter V Trustee's fees will total approximately $15,000.

2.4    **Class 1:  Secured Claim of Byline Bank**

The approximately $250,000 Secured Claim of Byline Bank ("Bank") will be paid

as described above, with funds currently held by the Bank in a collateral pledge account.

Class 1 is not impaired.

2.5    **Class 2:  Daube Secured Claims**

The Daube Secured Claims will not be paid under the Plan.  The Daube Secured

Claims are Insider claims and are impaired.

2.6    **Class 3:  General Unsecured Claims**

General Unsecured Claims totaling approximately $279,000, when the 3120 Claim

is taken out of the equation, will be paid 100% plus interest at the rate of 7% on the

Effective Date, out of existing operations and the Daube Capital Contribution. Class 3

Claims are not impaired.

2.7    **Class 4:  Shareholder Interests**

As a result of the Agreement, all other  shareholding interests will be cancelled,

and Daube and/or his designee will be the sole shareholder of the Reorganized Debtor.

**ARTICLE III**
**BALLOTING WITH RESPECT TO THE PLAN**

3.1    No balloting is necessary under the Plan.

**ARTICLE IV**
**IMPLEMENTATION OF PLAN**

4.1    Upon Confirmation, the Reorganized Debtor shall be re-vested with its

assets, subject only to the terms and conditions of this Plan.  The Debtor shall be entitled

to continue to operate and manage its business and financial affairs in the ordinary course

without further Order of this Court, except as hereinafter set forth.

-13-

4.2      Upon Confirmation, an injunction under Section 524 of the Bankruptcy Code shall arise to prevent any party from foreclosing its Lien or Security Interest in any assets of the Debtor or otherwise enforcing Claims against the Debtor and its assets except in a manner provided for under the terms and conditions of this Plan.   This injunction shall remain in effect to prevent said actions until all distributions have been made in accordance with the terms and conditions of the Plan.

4.3      Management of the Debtor will remain unchanged after Confirmation of the Plan, but the Debtor's corporate name will be Superior Collision Custom, Inc.

4.4      After Confirmation of the Plan, the Debtor will continue to operate its business in the ordinary course.

4.5      The Debtor will have the right to make any distribution to creditors earlier than required by the Plan, without penalty.

4.6   The Debtor, through its Chief Executive and Chief Financial Officer, Jackie Cahan, shall be the disbursing agent charged with making the payments required under the Plan.   The Debtor reserves the right to replace the disbursing agent, with such replacement to be within the sole discretion of the Debtor.

4.7      The Plan is self-executing.  The Debtor shall not be required to execute any newly created documents to evidence the Claims, Liens or terms of repayment to the holder of any Allowed Claim.  The terms of this Plan will exclusively govern payments to creditors and any other rights of creditors as against the Debtor and its property. Furthermore, upon the completion of the payments required under this Plan to the holders of Allowed Claims, such Claims, and any Liens and Security Interests that may support such Claims, shall be deemed released and discharged.

-14-

4.8     The Reorganized Debtor shall have the right, power and authority after Confirmation to commence any preference, fraudulent conveyance or other litigation it deems appropriate. The Bankruptcy Court shall retain jurisdiction, if any, for such litigation, including litigation commenced or to be commenced.

## ARTICLE V
## EXECUTORY CONTRACTS

5.1     Unless otherwise expressly provided in this Plan, all executory contracts and unexpired leases which exist between the Debtor and any other party, whether such executory contract be in writing or oral, which has not been previously assumed, assigned, rejected or otherwise terminated by the Debtor shall be deemed assumed upon Confirmation of this Plan, except that upon Confirmation of the Plan, the Debtor shall be deemed to have rejected its lease with 3124 W. Lake Avenue LLC, as landlord, for the premises at 3124 W. Lake Ave., Glenview, IL 60026  Furthermore, the debtor intends as of Confirmation, to reject the executory contracts with Cintas Corporation, LaMarco Security Systems, Mancuso Naming Rights, and Samba Safety Corporation.

5.2     Any and all Claims asserted by any party arising from the rejection of executory contracts and unexpired leases pursuant to this Plan must be filed on or within thirty (30) days following Confirmation of the Plan.  Further, with respect to Claims for default relating to any unexpired lease or executory contract that is deemed assumed pursuant to the Plan, any and all such Claims must also be filed on or within thirty (30) days following the assumption.  Allowed Claims emanating from the rejection of unexpired leases and executory contracts will be treated as Class 3 Claims.  Any person failing to file such a Claim within the time provided herein shall be forever barred from asserting such Claim and shall not receive any distribution under this Plan.

5.3     The provisions set forth herein shall be equally applicable to executory contracts and unexpired leases of real and personal property.

## ARTICLE VI
## BANKRUPTCY COURT'S RETENTION OF JURISDICTION

6.1    The Bankruptcy Court shall retain jurisdiction after Confirmation to: (i)  consider applications for fees and allowances for professional persons; (ii) supervise the implementation of this Plan; (iii) consider objections to Claims against the Debtor and Debtor's Estate; (iv) consider applications for the assumption, assignment and/or rejection of executory contracts; (v) hear and conclude all adversary proceedings or contested matters; (vi) resolve disputes regarding interpretation of this Plan; (vii) allow Administrative Claims; (viii) enter Orders to further consummation of the Plan; (ix) approve modification of the Plan upon motions brought before the Bankruptcy Court in accordance with Section 1193 of the Bankruptcy Code; (x) consider all applications and matters pending before the Bankruptcy Court on the date of Confirmation; (xi) enter any order, including injunctions, necessary to enforce title, rights and powers of the Debtor, and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary; (xii) enforce terms of the Plan; (xiii) hear and conclude all matters brought by the Debtor under paragraph 4.8 of this Plan; and (xiv) enter an Order concluding and terminating this Chapter 11 case.

## ARTICLE VII
## INVALIDATION OF LIENS AND DISCHARGE

7.1   The provisions of the confirmed Plan shall bind all creditors and other parties in interest, whether or not such persons accept the Plan.  The distributions provided under the Plan shall be in exchange for and in complete satisfaction and release of all Liens,

Security Interests and Claims against the Debtor and any of the assets or properties of

Debtor's Estate.  Unless otherwise specifically provided to the contrary herein or in the

Confirmation Order, on and after Confirmation, all holders of Claims shall be precluded

from asserting any Lien, Security Interest or Claim against the Debtor.

## ARTICLE VIII
## DEFAULT, CURE, NOTICE AND ACCELERATION PROVISIONS

8.1    The Debtor shall be deemed in default under the terms of the Plan if, without

prior written consent of a particular holder of a Claim, it fails to comply with the payment

plan described herein with respect to that claimant.

8.2    Except as otherwise provided herein, a claimant shall provide the Debtor

and any guarantors with written notice of any default under the Plan.  If the Debtor fails

to cure any default within fourteen (14) calendar days following receipt of written notice

of such default, then the particular claimant shall be entitled to pursue its remedies as are

available to it pursuant to applicable law.

8.3    Except as otherwise provided herein, any notice to be given to the Debtor

or other written matter to be delivered to the Debtor pursuant to the Plan shall be deemed

received either upon personal delivery to the address listed below, or five (5) business

days after placing such notice or written matter in the United States mail, postage prepaid,

first class, properly addressed to the Debtor and its counsel at the addresses stated

below:

Mancuso Motorsports, Inc.                    Attorneys for Debtor:
3124 W. Lake Avenue                          Scott R. Clar
Glenview, IL 60026                           Crane, Simon, Clar & Goodman
Attn: Jackie Cahan                           135 S. LaSalle St., # 3950
                                             Chicago, IL 60603

8.4    The Debtor reserves the right to accelerate any payments that are due

under the Plan.  To the extent such payments are accelerated, the Debtor shall be

excused from making semi-annual payments in an amount equal to such accelerated payments.

## ARTICLE IX
## INTEREST AND PENALTIES

9.1     Except as otherwise provided herein, or required by the Bankruptcy Code, no interest or penalties accruing on or after December 16, 2022, shall be paid on any Allowed Claim nor shall any creditor claiming any such interest or penalty be entitled to have its Claim for interest or penalty allowed for payment pursuant to the Plan.

## ARTICLE X
## CONFIRMATION OF PLAN UNDER
## SECTION 1191 OF THE BANKRUPTCY CODE

10.1   The Debtor will have the right to make any distribution to creditors earlier than required by the Plan without penalty.  The Debtor shall have the right, power and authority after Confirmation of the Plan to commence any preference, fraudulent conveyance or other litigation it deems appropriate.[6]  Any funds realized from such claims and retained causes of action may be used to make the payments under the Plan, if necessary.  The Bankruptcy Court shall retain jurisdiction for such litigation.

10.2   The provisions of the Plan shall bind all creditors, Interest holders and parties in interest. Except as expressly provided in the Plan, no interest or penalties shall accrue or be paid to any creditor.

10.3   In the event that all applicable requirements of Section 1129(a) of the Bankruptcy Code, other than in subsection (8),(10), and (15) of that section are met, notwithstanding Section 510(a) of the Bankruptcy Code, the Debtor reserves the right,

---

[6] Other than as disclosed in the Debtor's Statement of Financial Affairs, as filed with the Bankruptcy Court, the Debtor has not completed an analysis of potential preference, fraudulent conveyance claims and causes of action.

pursuant to Section 1191 of the Bankruptcy Code, to request that the Bankruptcy Court conduct a Confirmation hearing.  Accordingly, if Class 1, Class 2 or Class 3 rejects the Plan, the Bankruptcy Court could still confirm the Plan under Section 1191 of the Bankruptcy Code if the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Interests that are impaired under, and has not accepted, the Plan.  Since the Debtor is paying all Allowed Claims in full, with interest on the Effective Date, there are no impaired classes, and therefore this provision is really inapplicable.

**ARTICLE XI**
**UNCLAIMED PROPERTY**

11.1    In the event that any distribution made to a claimant by the Debtor under this Plan remains unclaimed ninety (90) days after such distribution was mailed, this distribution shall be deemed unclaimed, shall become property of the Debtor, and shall not be recouped by any claimant in subsequent distributions. Once the distribution is recouped by the Debtor, the claimant shall forfeit any and all legal and equitable right to such distribution and the proceeds thereof.

11.2   If the distribution is mailed to the address listed in the claimant's proof of claim, or in the event that no proof of claim was filed, if mailed to the address listed for the claimant in the bankruptcy schedules on file with the Bankruptcy Court, and is returned as undeliverable, the distribution shall be deemed unclaimed.  Notice of a claimant's change of address shall be sent to the Debtor by the claimant in accordance with paragraph 8.3  of this Plan.  In the event that any distribution is deemed unclaimed, the Debtor shall have no obligation to make further distributions under this Plan to such claimant and all further distributions shall be deemed waived.

## ARTICLE XII
## CLAIMS OBJECTIONS

12.1    The Debtor reserves the right to file objections to any Claims after Confirmation.  It is not anticipated that the Debtor will file any claims objections.

## ARTICLE XIII
## DISPUTED CLAIMS

13.1    In the event claims objections are filed, no distribution shall be made to the holders of disputed Claims until the dispute is resolved either by agreement or by Order of the Bankruptcy Court.

## ARTICLE XIV
## RETENTION OF CAUSES OF ACTION

14.1  The Reorganized Debtor shall retain any and all claims and causes of action it has against third parties.  Such claims and causes of action shall survive and be unaffected by Confirmation of this Plan.  Any funds realized from such retained claims and causes of action shall be property of the Debtor and may be used to pay the Daube Secured Claims.

## ARTICLE XV
## GENERAL PROVISIONS

15.1    Rules of Construction.  Unless otherwise specified herein or the context clearly indicates otherwise, the rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules are applicable to this Plan.

15.2    Definitions.  A term used in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

15.3    Amendment and Modification.  The Debtor may alter, amend or modify the Plan before or after Confirmation in accordance with the applicable provisions of the Bankruptcy Code.

15.4    Severability.  Should any provision of this Plan be determined to be unenforceable, such determination shall not impair, limit or otherwise affect the enforceability of any other provision of this Plan.

15.5    Successors and Assigns.  The rights and obligations of any person or entity referred to in this Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of any such person or entity.

15.6    Headings.  The headings of the Articles, Paragraphs and Sections of this Plan are inserted for convenience only and shall not affect the interpretation therein.

15.7    Effect of Appeals.  Unless the Confirmation Order is stayed pending appeal, the Debtor may consummate this Plan notwithstanding the pendency of an appeal from the Confirmation Order, or the timely service of the filing of a Motion under Bankruptcy Rules 7052, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

15.8    Debtor's Corporate Existence.   The Debtor's corporate existence will survive as Superior Collision Custom LLC.

15.9    Computation of Time.  Unless expressly provided otherwise in this Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

15.10  Insurance Preservation.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover any claims against the Debtor or any other person.

15.11   <u>Exculpation; Release</u>.   Notwithstanding anything herein to the contrary, except with respect to the express duties provided herein, and the State Court Litigation, neither the Debtor nor any of its present or former directors, officers, employees, advisors, attorneys, affiliates, subsidiaries or agents (in their capacities as such) shall have or incur any liability to any holder of a Claim or Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors or attorneys, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Debtor-in-Possession, this Chapter 11 case, the pursuit of Confirmation of the Plan, or the consummation of the Plan, except for acts that are fraudulent or for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of this Chapter 11 case.

15.12   <u>Terms Binding</u>.   On the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents filed in accordance with the Plan and executed by the Debtor in connection with the Plan, shall be binding upon the Debtor, all creditors and shareholders and all other entities that are affected in any manner by the Plan.  All agreements, instruments and other documents filed in connection with this Plan shall have full force and effect, and shall bind all parties thereto as of Confirmation.

15.13   <u>Inconsistencies</u>.   In the event that there is any inconsistency between the Plan and any exhibit to the Plan or other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

15.14   <u>Compliance with Applicable Law</u>.   It is intended that the provisions of the Plan (including the implementation thereof) shall be in compliance with all applicable laws

-22-

and any rules and regulations promulgated thereunder. If the Debtor concludes that the Plan may not comply with applicable law, then in such event the Debtor intends to amend the Plan in such respects as it deems necessary to bring the Plan into compliance therewith.

15.15    <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or any other federal law is applicable to the extent the law of a different jurisdiction is validly elected by the Debtor, the rights, duties and obligations arising under the Plan shall be governed in accordance with the substantive laws of the United States of America and, to the extent federal law is not applicable, the State of Illinois provided, however, this provision is not intended to change the substantive law which would otherwise govern any particular cause of action which may be brought by the Debtor after Confirmation.

**XVI**
**LIQUIDATION ANALYSIS**

16.1    The Debtor's assets and their value as estimated by Debtor's management as of the filing of the Plan are as follows:

| Description | Debtor's Estimated Liquidation Value |
|---|---|
| Cash | $123,532.13 |
| Accounts Receivable | $230,022.48 |
| Automotive Equipment | $301,913.01 |
| FFE | $32,421.14 |
| Office Equipment | $14,543.49 |
| Total Assets | $702,432.25 |

According to the above chart, the estimate of Debtor's management of the total liquidation value of the Debtor's assets is at least approximately $702,432.25. The Debtor's approximate liabilities may be summarized as follows:

| **Liabilities** | **Amount** |
|---|---|
| Secured Claims | $10,000,000.00 |
| Administrative Claims | 50,000.00 |
| Priority Wage Claims | 0 |
| Priority Tax Claims | 0 |
| General Unsecured Claims | 1,071,480.60[7] |
| Approximate Total | $11,121,480.60 |

16.2  The Debtor is paying all non-insider Allowed Claims in full, plus interest at the rate of seven percent (7%) on the Effective Date. In the event of a forced liquidation, any proceeds realized from the sale of the Debtor's assets would first be used to pay the costs of sale, which for purposes of this discussion, the Debtor has estimated to be an amount equal to ten percent (10%) of the gross sales proceeds. Once the costs of sale have been paid, secured, administrative and priority Claims would be paid. Only after making the above disbursements of sales proceeds could any distribution be made to general unsecured creditors. The following chart depicts the likely distributions of sale proceeds realized from the forced liquidation of the Debtor's assets:

| | **Amount** |
|---|---|
| Gross Sales Proceeds from Forced Liquidation: | $702,432.25 |
| | |
| Less: | |
| a. Cost of Sale (10% approx) | $70,243.23 |
| b.  Approx pay- off of secured, admin and priority | $10,050,000.00 |

---

[7] Including the 3120 Unsecured Claim.

Approximate balance available to unsecured
creditors                                                    ($9,417,810.98)

16.3    Since non-insider Unsecured Claims are receiving a 100% distribution, plus

interest, payment to the holders of the Allowed Unsecured Claims under the Plan

represents as much or more than unsecured creditors would ever receive in a liquidation.

Furthermore, the existing trade debt to be paid according to ordinary business terms

would also be included in the pool of Administrative Claims, thereby substantially

increasing the total dollar amount due Administrative Claimants in a liquidation and further

reducing the funds available for unsecured creditors.   Also, the projected amount

allowable for Administrative Claims, in the event of conversion, would further increase to

account for the fees and costs attributed to a Chapter 7 Trustee and his/her

administration.  Clearly, compared to a forced liquidation, unsecured creditors are getting

more under the Plan.

### XVII
### IMPLEMENTATION AND FEASIBILITY OF THE PLAN

17.1    Distributions under the Plan shall be made from proceeds realized from the

continued operation of the Debtor's business by the Reorganized Debtor and from the

Daube Capital Contribution.  The Debtor does not intend to borrow funds but reserves the

right to borrow funds in order to make the Plan payments.  The Debtor will have cash to

pay Administrative Claims in full.

17.2    Attached to this Plan as **Exhibit D** are the cash flow projections for the life

of the Plan.   The projections were prepared by Debtor's management, included the

involvement of the Trustee and are based upon an analysis of past business results and

estimated future business activity.  No further investment other than the Daube Capital

-25-

Infusion is required to fulfill distributions under the Plan. The Plan is feasible given the reasonable projections of future business activity by the Debtor, and the Daube Cash Contribution. These projections clearly reflect the Debtor's ability to perform under the proposed Plan. Given the Debtor's successful efforts in this Chapter 11 case, it is more than reasonable to conclude that the Debtor will be equally successful in making the payments required under the Plan.

The projections represent reasonable calculations based upon historical progressions of the Debtor's business. Furthermore, the Debtor's achievements during the course of this reorganization case further indicate that the Plan is feasible. The Debtor believes that the Plan represents an opportunity for the holders of all Allowed Claims to be paid in full and would therefore be receiving substantially more than such claimants would receive in a forced liquidation. Therefore, the Plan is fair and equitable and does not unfairly discriminate.

## RECOMMENDATION

The Debtor strongly recommends that those persons entitled to vote, vote to accept this Plan of Mancuso Motorsports, Inc., Debtor/Debtor-in-Possession.

MANCUSO MOTORSPORTS, INC.

By: /s/Scott R. Clar
        One of its attorneys

**DEBTOR'S COUNSEL:**
Scott R. Clar
(Atty. No. 06183741)
Crane, Simon, Clar & Goodman
135 S. LaSalle Street, Suite 3950
Chicago, Illinois 60603
(312) 641-6777
sclar@cranesimon.com

## SETTLEMENT AGREEMENT AND GENERAL MUTUAL RELEASES

This Settlement Agreement and General Mutual Releases ("Agreement"), dated September ___13___, 2023 ("Effective Date"), is entered into by and among MANCUSO MOTORSPORTS, INC., an Illinois corporation ("Corporation"), RYAN O. DAUBE, individually ("Daube") and as Trustee of the RYAN O. DAUBE REVOCABLE TRUST ("Daube Trust"), FRANCIS ROTI ("Roti"), individually, ROBERT P. MANCUSO ("Mancuso"), individually, OWEN SCHNAPER ("Schnaper"), individually, 3124 WEST LAKE AVENUE, LLC, an Illinois limited liability company ("Real Estate Company"), NORTHSHORE AUTOSPORT, INC., an Illinois corporation ("Northshore"), O'HARE AUTO BODY, LTD., an Illinois corporation ("O'Hare"), and OWENS ARMY, LLC, a Michigan limited liability company ("Owens Army"). The Corporation, Daube and the Daube Trust are collectively referred to herein at times as the "Corporation Parties". Roti, Mancuso, and Schnaper are collectively referred to herein at times as the "Roti Parties". The Corporation Parties, the Roti Parties, the Real Estate Company, Northshore, O'Hare, and Owens Army are collectively referred to herein at times as the "Parties" or, individually, as a "Party".

### Recitals:

WHEREAS, in June 2018, the Corporation, the Daube Trust, and the Roti Parties entered into a Shareholders Agreement, which was amended on April 1, 2020 pursuant to a First Amendment to Shareholders Agreement (collectively, "Shareholders Agreement");

WHEREAS, on May 4, 2018, Daube, Roti, Mancuso, and Owens Army entered into an Operating Agreement related to the ownership and management of the Real Estate Company ("Operating Agreement");

WHEREAS, on or about April 1, 2020, the Corporation and Mancuso entered into a Name Use Rights Agreement ("Name Use Agreement");

WHEREAS, on or about July 16, 2018, Byline Bank ("Byline") extended a loan of $1,350,000.00 to the Corporation, Daube, the Daube Trust, and the Andrea S. Daube Revocable Trust ("Corporation Loan");

WHEREAS, on December 14, 2018, Daube, the Roti Parties, and Byline entered into an Amended Restated Loan and Security Agreement wherein Byline agreed to make a loan to the Real Estate Company in the principal amount of $980,000.00 ("Real Estate Loan") to purchase the real property located at 3124 W. Lake Ave, Glenview, Illinois 60026 ("Property"). As part of the loan transaction, on or about December 14, 2018, Daube and the Roti Parties, as guarantors, executed and tendered a Guaranty of Payment and Performance ("Guaranty") to Byline;

WHEREAS, Daube, the Real Estate Company, and the Roti Parties desire to release the Roti Parties as guarantors of the Real Estate Loan and from any and all obligations, duties or liabilities of whatever nature arising under or in connection with the Guaranty;

WHEREAS, on December 27, 2021, the Corporation filed a Complaint against the Roti Parties, Northshore, and O'Hare in the Circuit Court of Lake County, Illinois, County Department,



Law Division, captioned *MANCUSO MOTORSPORTS, INC., an Illinois corporation v. FRANCIS ROTI, an individual, ROBERT P. MANCUSO, an individual, NORTHSHORE AUTOSPORT, INC., a Wisconsin and Illinois corporation, and O'HARE AUTO BODY, LTD., an Illinois corporation,* Case No. 21L0000924 ("Lawsuit"), which is stayed pending an arbitration between the Corporation, the Roti Parties, and Northshore;

WHEREAS, the Roti Parties, Northshore, and O'Hare deny any and all liability alleged against each in the Lawsuit;

WHEREAS, on April 12, 2022, Northshore filed a Complaint in Replevin against the Corporation in the Circuit Court of Cook County, Illinois, Municipal Division, First District, captioned *NORTHSHORE AUTOSPORT, INC., an Illinois corporation v. MANCUSO MOTORSPORTS, INC., an Illinois corporation,* Case No: 2022-M1-500171 ("Replevin Proceeding"), seeking the return of certain vehicles and other property owned by Northshore, which is subject to the automatic stay in the Bankruptcy Proceeding (defined below);

WHEREAS, the Corporation Parties deny any and all liability alleged against each in the Replevin Proceeding;

WHEREAS, on September 12, 2022, the Corporation recorded a Notice of Lien in the amount of $178,586.67, as Document No. 2225522005 ("Storage Lien"), against the vehicles and other property that are the subject of the Replevin Proceeding with the Cook County Recorder of Deeds;

WHEREAS, on November 23, 2022, the Corporation filed a Demand for Arbitration against Roti, Mancuso, and Northshore with ADR Systems, Inc., captioned *MANCUSO MOTORSPORTS, INC., an Illinois corporation v. FRANCIS ROTI, an individual, ROBERT P. MANCUSO, an individual, and NORTHSHORE AUTOSPORT, INC., a Wisconsin and Illinois corporation,* ADR No. 58374CAJH ("Arbitration Proceeding"), which is stayed by agreement of the Parties thereto;

WHEREAS, Roti, Mancuso, and Northshore deny any and all liability alleged against each in the Arbitration Proceeding;

WHEREAS, on December 21, 2022, the Corporation filed a Voluntary Petition under Subchapter V Chapter 11 of the United States Bankruptcy Code in the United States District Court for the Northern District of Illinois, Eastern Division, captioned *In Re: Mancuso Motorsports, Inc.,* Case No: 22-14513 ("Bankruptcy Proceeding"), which is still pending;

WHEREAS, on February 22, 2023, Mancuso filed a Proof of Claim (Claim No. 3) in the amount of $118,226.53 ("Mancuso's Proof of Claim") in the Bankruptcy Proceeding, and the Corporation has filed an objection to Mancuso's Proof of Claim;

WHEREAS, on February 24, 2023, Roti filed a Proof of Claim (Claim No. 4-1) in the amount of $10,000.00 (amended on May 10, 2023 – Claim No. 4-2) and a Proof of Claim (Claim No. 5-1) in the amount of $20,000.00 (collectively, "Roti's Proof(s) of Claim") in the Bankruptcy

Proceeding, and the Corporation has filed an Objection to only Roti's Proof of Claim No(s). 4-1 and 4-2;

**WHEREAS,** the Corporation filed a plan of reorganization on May 14, 2023 contemplating a 100% distribution to all allowed claims;

**WHEREAS,** the Corporation extended it rights under the Name Use Agreement through and including September 30, 2023 by Order entered by the Bankruptcy Court on March 21, 2023;

**WHEREAS,** on April 3, 2023, Byline, Daube, the Daube Trust, Andrea S. Daube Revocable Trust, the Real Estate Company, and the Roti Parties entered into a Forbearance Agreement whereby Byline agreed, among other things, to forbear exercising its rights and remedies available to it under various loan-related documents and applicable law related to the Corporation Loan, the Real Estate Loan, and the Guaranty; and

**WHEREAS,** the Corporation will seek approval of this Agreement from the Bankruptcy Court in the Bankruptcy Proceeding ("Bankruptcy Approval") and the Parties desire to avoid incurring additional attorneys' fees and costs and litigation, to resolve all differences between themselves that were raised or could have been raised in the Lawsuit, the Replevin Proceeding, the Arbitration Proceeding, and the Bankruptcy Proceeding, all of which shall be collectively referred to herein as the "Litigation" and to fully release and discharge each other as provided herein.

**NOW, THEREFORE,** in consideration of the mutual promises contained in this Agreement, for good and valuable consideration, the receipt and sufficiency of which each of the Parties acknowledge, the Parties agree as follows:

1.   Recitals. The above Recitals are incorporated herein by reference.

2.   Settlement Terms.   Upon full execution of this Agreement and obtaining Bankruptcy Approval:

(a)   The Corporation Parties shall within three (3) business days:

(i)   other than the Corporation, pay to the Roti Parties the sum of Two Hundred Fifty Thousand Dollars and 00/100 ($250,000.00) ("Settlement Payment") via wire transfer to the Client Trust Account of Lyman Law Firm, LLC ("Lyman Law Firm") in accordance with the wire transfer instructions to be provided to the Corporation Parties, in immediately available funds;

(ii)   deliver a fully completed Release of the Storage Lien to the Lyman Law Firm in recordable form which upon delivery the Corporation Parties authorize and direct that such may be recorded thereafter;

3

(iii)    deliver possession of the five (5) vehicles identified in <u>Exhibit A</u> attached hereto to Roti free and clear of all liens and encumbrances placed on such vehicles by any of the Corporation Parties;

(iv)    file Articles of Amendment with the Illinois Secretary of State changing the name of the Corporation to any name that does not use the name "Mancuso Motorsports" or any derivative or variation thereof after expiration of the Name Use Agreement on September 30, 2023; and

(v)    commence removing the name "Mancuso" from the Corporation's Property and hereafter promptly cause the name "Mancuso" to be removed from its website(s), domain names, email addresses and all other advertisements, and hereafter make all reasonable efforts to not use the name "Mancuso" in any public manner whatsoever.

(b)    The Roti Parties:

(i)    waive and agree not to assert any rejection or unsecured pre-petition claim on behalf of the Real Estate Company in the Bankruptcy Proceeding;

(ii)    waive and release the Roti Proof(s) of Claim and the Mancuso Proof of Claim;

(iii)    waive any and all objections to the Corporation's Plan of Reorganization currently filed in the Bankruptcy Proceeding ("Reorganization Plan"); and

(iv)    assign, transfer and convey to Daube or his designee, all of the shares owned by each in the Corporation, free and clear of all liens and encumbrances in accordance with <u>Section 4</u> below.

(c)    Roti, Mancuso, and Owens Army shall assign, transfer and convey all of the Membership Interest owned by each in the Real Estate Company to Daube or his designee, free and clear of all liens and encumbrances in accordance with <u>Section 6</u> below.

3.    <u>Release of Guaranty</u>. Upon execution of this Agreement or as otherwise provided herein, as material inducement for, and in consideration of, the promises identified herein, the Corporation Parties and the Real Estate Company agree to cause the Roti Parties to be released as guarantors from the Corporation Loan, the Real Estate Loan and any other loan or financing agreement or arrangement related, directly or indirectly, to the Corporation or the Real Estate Company by causing Byline to release in writing, in a form acceptable to the Roti Parties, the Roti Parties from any further obligations, duties or liabilities of every nature arising or that may arise under or in connection with any guaranty by any of the Roti Parties related thereto ("<u>Release Obligations</u>"), including without limitation, the Guaranty. Notwithstanding the foregoing, in the event the Corporation Parties and/or the Real Estate Company are unable to cause the Roti Parties to be released and discharged under the Guaranty and the obligations, duties or liabilities arising

4

under or in connection with the Corporation Loan, the Real Estate Loan, the Corporation Parties and the Real Estate Company shall unconditionally, absolutely and irrevocably agree to protect, defend, hold harmless, and indemnify the Roti Parties and Owens Army and their respective heirs, executors, administrators, legatees, personal representatives, officers, members, managers, employees, representatives, agents, and successors and assigns, and anyone claiming through them, in their individual and/or corporate capacities, from and against any and all claims, demands, actions, suits, damages, liabilities, losses, settlements, judgments, costs, and expenses, whether or not involving a claim by a third party, including but not limited to reasonable attorneys' fees and costs (collectively, "Claims"), directly or indirectly, arising out of or related to any breach of, default of, or failure pay amounts due or meet any obligation under, the Corporation Loan, the Real Estate Loan, the Guaranty and any such or related indebtedness. The Corporation Parties and the Real Estate Company's Release Obligations in this Section 3 shall survive.

4.      Assignment of the Roti Parties' Stock. In exchange for the Settlement Payment and other consideration stated herein, the Roti Parties agree to assign, transfer and convey to the Daube Trust or its designee, all of the shares owned by each in the Corporation, free and clear of all liens and encumbrances by executing and tendering to the Corporation an Assignment of Stock in substantially the same form attached as Exhibit B.  The Corporation Parties and the Roti Parties shall cause the Corporation to authorize and consent to the assignment of the Roti Parties' shares by executing Consent Resolutions of the Shareholders of Mancuso Motorsports, Inc. in substantially the same form attached hereto as Exhibit C.

5.      The Corporation Parties' Release, Covenant Not to Sue, and Indemnification.

(a)      In exchange for the Roti Parties' Assignment(s) of Stock and other good and valuable consideration acknowledged by the Corporation Parties, the Corporation Parties on behalf of themselves, their respective executors, administrators, heirs, beneficiaries, legatees, personal representatives, predecessors, successors and assigns, trustees, shareholders, directors, officers, employees, representatives, agents, and anyone claiming through them, including, but not limited to, DFK Group, Inc., DFK Direct Investments, LLC and their affiliates, release, acquit, and forever discharge the Roti Parties, Northshore, and O'Hare and their respective heirs, executors, administrators, legatees, beneficiaries, personal representatives, shareholders, directors, officers, employees, representatives, agents, predecessors, and successors and assigns, from any and all claims, suits, demands, contracts, damages, judgments, debts, attorneys' fees, costs, actions and causes of action of every kind and nature, whether known or unknown, any and all past, present and future obligations that have or may in the future arise or as a result of the Roti Parties' ownership and/or management of the Corporation, including, but not limited to, any acts taken by the Roti Parties on behalf of the Corporation prior to the date of this Agreement that is related to the Shareholders Agreement, that which specifically applies the Name Use Agreement and any conduct or activity alleged in the Litigation. The Corporation Parties further agree, represent and warrant to the Roti Parties, Northshore, and O'Hare that they realize and acknowledge that factual matters now unknown to them, whether alleged in the Litigation at this time or not, may have given or may hereafter give rise to causes of action, claims, suits, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected, and further agree, represent and warrant that the release provided hereunder has been negotiated and agreed upon in light of that realization and that the undersigned nevertheless hereby intends

to release, discharge and acquit the Roti Parties, Northshore, and O'Hare from any such unknown claims. The Corporation Parties acknowledge that this release is intended to be a general release and covenant and agree not to institute, maintain or prosecute any claim against any of the Roti Parties, Northshore, and O'Hare for a claim released hereunder or which is the subject matter of the Shareholders Agreement or the Litigation. The provisions in this <u>Section 5</u> shall serve as an absolute bar and defense to any claim released hereunder filed by one or more of the Corporation Parties hereafter. Notwithstanding the foregoing, this provision shall not release the Roti Parties, Northshore, or O'Hare from any obligation expressly set forth in this Agreement.

(b)     The Corporation Parties shall indemnify, defend and hold harmless the Roti Parties and their respective heirs, executors, administrators, legatees, personal representatives, and successors and assigns, and anyone claiming through them, in their individual and/or corporate capacities, from and against any and all claims, demands, actions, suits, damages, liabilities, losses, settlements, judgments, costs, and expenses, whether or not involving a claim by a third party, including but not limited to reasonable attorneys' fees and costs, directly or indirectly, arising out of or related to: (i) the Shareholders Agreement; (ii) the Roti Parties' ownership and/or management of the Corporation, including, but not limited to, any acts taken by the Roti Parties on behalf of and which are in furtherance of the business of the Corporation; (iii) any breach of any representation or warranty of the Corporation Parties contained herein; and (iv) any third party Shareholder Claims which arise out of, relate to or result from any act or omission of the Corporation Parties (collectively, "Shareholder Claims"), notwithstanding the above the Corporation Parties shall not be required to indemnify, defend or hold harmless the individual acts or conduct of fraud, willful misconduct, or intentional acts of dishonesty by Roti, Mancuso or Schnaper that are not alleged in the Litigation, occurred and were not known to the Corporation prior to the Effective Date and which are not protected by the broadest interpretation of the Business Judgment Rule in Illinois.

6.     <u>Assignment of Roti, Mancuso, and Owens Army's Membership Interest</u>. In exchange for the Settlement Payment and the other consideration stated herein, Roti, Mancuso, and Owens Army agree to assign, transfer and convey all of the Membership Interest owned by each in the Real Estate Company to Daube or his designee, free and clear of all liens and encumbrances by executing and tendering to the Real Estate Company an Assignment of Membership Interest in substantially the same form attached as <u>Exhibit D</u>. The Members and Managers of the Real Estate Company shall cause the Real Estate Company to authorize and consent to the assignment and transfer of Roti, Mancuso, and Owens Army's Membership Interests by executing Consent Resolutions in lieu of meeting of the Members and Managers of 3124 West Lake Avenue, LLC in substantially the same form attached as <u>Exhibit E</u>. Since August 2022, Roti, Mancuso, and Owens Army each represent and warrant that each did not cause any funds to be distributed or paid to Roti, Mancuso, Owens Army or any third party from the Byline Bank account ending in 2113, a Byline escrow account or any other Real Estate Company bank account for personal use or for purposes not related directly or indirectly to the Real Estate Company.

7.     <u>The Real Estate Company and Daube's Release and Indemnification</u>.

(a)     In exchange for Roti, Mancuso, and Owens Army's Assignment(s) of Membership Interest, the Real Estate Company and Daube on behalf of themselves, their respective executors,

administrators, heirs, beneficiaries, legatees, personal representatives, predecessors, successors and assigns, managers, members, officers, employees, representatives, agents, and anyone claiming through them, in their individual and/or corporate capacities, release, acquit, and forever discharge the Roti Parties and Owens Army and their respective heirs, executors, administrators, legatees, personal representatives, managers, members, officers, employees, representatives, agents, and successors and assigns, in their individual capacity and, to the extent applicable, as a Manager of the Real Estate Company, from any and all claims, suits, demands, contracts, any and all past, present and future obligations that have or may in the future arise thereunder or as a result of Roti, Mancuso, Schnaper and Owens Army's ownership and/or management obligations of the Real Estate Company, including, but not limited to, any acts taken by Roti, Mancuso, Schnaper, and Owens Army on behalf of the Real Estate Company prior to the date of this Agreement and any conduct or activity alleged in the Litigation or which is related to the Operating Agreement and any of Roti, Mancuso, Schnaper and Owens Army's rights, duties and obligations in the Operating Agreement. The Real Estate Company and Daube further agree, represent and warrant to Roti, Mancuso, Schnaper, and Owens Army that they realize and acknowledge that factual matters now unknown to them may have given or may hereafter give rise to causes of action, claims, suits, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected, and further agree, represent and warrant that the release provided hereunder has been negotiated and agreed upon in light of that realization and that the undersigned nevertheless hereby intends to release, discharge and acquit Roti, Mancuso, Schnaper, and Owens Army from any such unknown claims.

(b)     The Real Estate Company and Daube shall defend, hold harmless, and indemnify Roti, Mancuso, Schnaper, and Owens Army and their respective executors, administrators, heirs, beneficiaries, legatees, personal representatives, predecessors, successors and assigns, managers, members, officers, employees, representatives, agents, and anyone claiming through them, in their individual and/or corporate capacities, from and against any and all claims, demands, actions, suits, damages, liabilities, losses, settlements, judgments, costs, and expenses, whether or not involving a claim by a third party, including but not limited to reasonable attorneys' fees and costs directly or indirectly, arising out of or related to: (i) the Operating Agreement; (ii) Roti, Mancuso, Schnaper, and Owens Army's ownership and/or management of the Real Estate Company, including, but not limited to, any acts taken by Roti, Mancuso, Schnaper, and Owens Army on behalf of the Real Estate Company; (iii) any breach of any representation or warranty of the Real Estate Company and Daube contained herein; and (iv) any third party Member Claims which arise out of, relate to or result from any act or omission of the Corporation Parties (collectively, "Member Claims"); notwithstanding the above the Real Estate Company and Daube shall not be required to indemnify, defend or hold harmless the individual acts or conduct of fraud, willful misconduct, or intentional acts of dishonesty by Roti, Mancuso, Schnaper or Owens Army that are not alleged in the Litigation or occurred and were not known by the Real Estate Company or Daube prior to the Effective Date.

8.     The Roti Parties, Northshore, Owens Army, and O'Hare's Release and Covenant Not to Sue. As material inducement for, and in consideration of, the promises identified herein, the Roti Parties, Northshore, Owens Army and O'Hare, on behalf of themselves, their respective heirs, executors, administrators, beneficiaries, legatees, personal representatives, predecessors, successors and assigns, shareholders, officers, directors, employees, representatives, agents, and

anyone claiming through them, hereby release, acquit and forever discharge the Corporation, Daube, the Daube Trust and their respective heirs, legatees, and personal representatives, predecessors, successors and assigns, trustees, shareholders, officers, directors, employees, attorneys, representatives, agents, and anyone claiming through them, in their individual and/or corporate capacities (collectively, the "Corporation Released Parties"), of and from any and all claims, causes of action, suits, demands, liabilities, promises, actions, damages, costs and expenses including attorneys' fees, known or unknown, for which the Roti Parties, Northshore, Owens Army, and O'Hare have now, had, or which may hereafter accrue on account of or in any way related, indirectly or directly, to the allegations stated or which could have been stated in the Litigation, and/or any other business dealings between one or more of the Parties at any time before the date of this Agreement. The Roti Parties, Northshore, Owens Army, and O'Hare acknowledge that this release is intended to be a general release and each covenants and agrees not to institute, maintain or prosecute any claim against any of the Corporation Released Parties for a claim released hereunder, or which is the subject matter of the Litigation. The provisions in this Section 8 shall serve as an absolute bar and defense to any claim released hereunder filed by one or more of the Roti Parties, Northshore, Owens Army, and O'Hare hereafter. Notwithstanding the foregoing, this provision shall not release the Corporation Released Parties from any obligation expressly set forth in this Agreement.

9.      Dismissal of the Litigation. Upon the full execution of this Agreement and approval by the Bankruptcy Court, the Parties shall cooperate and promptly cause the Lawsuit, the Replevin Proceeding, and the Arbitration Proceeding to be dismissed with prejudice and without costs.

10.      Confidentiality. The Parties agree to keep the terms of this Agreement confidential and not discuss or disclose to any person or entity that is not a party to this Agreement, any of the terms and conditions contained herein, other than to its counsel, accountants, or financial advisors, except as otherwise required by law. Notwithstanding the foregoing, nothing in this Agreement shall preclude any Party from disclosing the terms of this Agreement for the purposes of enforcing any rights under this Agreement, however, in the event of disclosure for the purposes of enforcement, the disclosing Party shall disclose only so much of this Agreement as necessary to comply with said legal or contractual obligations and redact the remainder of the Agreement.

11.      Attorneys' Fee and Enforcement. In the event any party pursues or files a lawsuit, claim, or proceeding to enforce this Agreement or to seek damages as a result of a party's breach hereunder, the prevailing party shall be entitled to all costs and expenses, including reasonable attorneys' fees, as determined by a court or arbitrator, if applicable, of competent jurisdiction.

12.      No Assignment of Claims/Rights. Each Party warrants, covenants and represents that, as of the date hereof, it/he/she (a) has not assigned, transferred or conveyed or purported to have assigned, transferred or conveyed, to any person or entity, any of the claims, demands, rights, duties, obligations, liabilities, damages, injuries, actions or causes of action released herein, (b) is not now contemplating filing a claim on its behalf or on behalf of any other person or entity against any Party hereto, and (c) is not aware of any pending or threatened claim by any third party related to the subject matter of the Litigation. Each Party further warrants, covenants and represents that it/he/she has the sole and complete right and authority to pursue the claims it is releasing and to enter into this Agreement resolving the claims it is releasing.

8

13.    <u>No Admission of Liability</u>. This Agreement shall not in any way be construed as an admission that any of the Parties engaged in any illegal or wrongful conduct, or that any Party has any rights whatsoever not released hereunder. Further, the Parties agree that they will not seek to use or introduce this Agreement into evidence in any proceeding without all of the Parties' prior written consent, except for a proceeding instituted by a Party for an alleged breach of this Agreement with the limited purpose of enforcing this Agreement, any proceeding in which a defense is asserted based on any provision of this Agreement, or as otherwise required by law.

14.    <u>Full Satisfaction</u>. This Agreement, and the rights and benefits provided by it, are acknowledged by the Parties to be in full and complete settlement and satisfaction of all claims and other rights that are released by this Agreement.

15.    <u>Governing Law/Jurisdiction</u>. The laws of the State of Illinois will govern the interpretation of this Agreement, without regard to its conflict of laws rules. The Parties agree that any litigation brought pursuant hereto for breach of this Agreement will be brought exclusively in the state court located in Cook County, Illinois, and the Parties irrevocably consent to the exercise of personal jurisdiction over himself, herself, or itself by such courts.

16.    <u>Tax Consequences</u>. The Parties acknowledge that no tax advice has been offered or given by any Party, their attorneys, agents, or any other representatives, to the other Party in the course of these negotiations, and each Party is relying upon the advice of its own tax consultant with regard to any tax consequences that may arise as a result of the execution of this Agreement and shall be responsible for any taxes or charges assessed or imposed upon it by any governmental or quasi-governmental agency.

17.    <u>Integration/Non-Reliance</u>. This Agreement contains the entire and only understanding between the Parties as to the subject matter of this Agreement and supersedes any and all prior and/or contemporaneous oral or written communications, negotiations, agreements, representations and understandings relating to the subject matter of this Agreement. The Parties, and each of them, represent and agree that no promise, statement or inducement has been made that caused them to sign this Agreement, other than those expressly set forth in this Agreement. Any and all representations that any Party considers to be material to its decision to enter into this Agreement have been included in this Agreement and each Party agrees that any alleged representation, promise, statement, or inducement not included in this Agreement was not material to its decision to enter into this Agreement. This Agreement shall be accepted as conclusive proof that any reliance by any Party on any alleged representation, promise, statement, or inducement not included in this Agreement shall not be justified. In any action where any Party contends that any other Party has made any representation, promise, statement, or inducement, and such contention is inconsistent with this <u>Section 17</u>, the court shall summarily dismiss any such claim, even if the applicable law would not support such summary dismissal absent this clause.

18.    <u>Interpretation of Agreement</u>. This Agreement shall be construed as having been drafted by all the Parties to it, so that any rule of construction by which ambiguities are interpreted against the drafter shall have no force or effect. In the event of a dispute regarding the meaning of this Agreement, or any term of this Agreement, drafts of the Agreement and communications

9

concerning such drafts shall be inadmissible for any purpose including, without limitation, to aid in the interpretation of this Agreement.

19.    Acknowledgments and Authority to Execute. Each Party acknowledges that it/he/she has carefully read and fully understands all of the provisions of this Agreement; that it/he/she agrees to all of the provisions of this Agreement; that it/he/she is voluntarily entering into this Agreement; and that it/he/she has the capacity to enter into this Agreement. Each Party acknowledges that it/he/she has discussed all aspects of this Agreement with its counsel to the full extent desired. Each Party and the person signing on behalf of each Party, represents that the person signing this Agreement has the authority to sign and enter into this document and to bind himself or herself and the entities and persons on whose behalf he or she is signing, including his or her attorneys.

20.    Voluntary Agreement; Reliance on Counsel. This Agreement is entered into freely and voluntarily by the Parties, and the Parties have had an opportunity to have this Agreement reviewed by legal counsel of their own choosing and acknowledge that they have reviewed this Agreement, that their understanding of this Agreement is based upon such review and not based upon any statements, representations, or actions of any other Party, and that the execution of this Agreement is not under duress or coercion.

21.    Severability. To the extent that a court of competent jurisdiction holds that any portion of this Agreement is invalid or legally unenforceable and can be excised without undermining the overall intention of this Agreement on its terms, the Parties agree that the remaining portions shall not be affected and shall be given full force and effect.

22.    Knowing Consent to Agreement. By executing this Agreement, the Parties acknowledge that they have been afforded sufficient time to understand its terms and effects, that the agreements and obligations under this Agreement are made voluntarily, knowingly and without duress, and that no Party has made any representations inconsistent with the provisions of this Agreement.

23.    Waiver. The failure of any Party to enforce any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the right of any Party thereafter to enforce each and every such provision. No waiver of any breach of this Agreement shall be held to constitute a waiver of any other or subsequent breach.

24.    Amendments. No amendment, interpretation, waiver or termination of any of the provisions of this Agreement shall be effective unless made in writing and signed by the Parties to this Agreement.

25.    Modification. This Agreement may not be altered, amended, or extinguished except by a writing which expressly refers to this instrument and is signed subsequent to the date of this instrument by duly authorized representatives of each of the Parties whose rights or obligations would be changed by the modification.

26. **JURY WAIVER. EACH PARTY HERETO KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHTS TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

27. _Headings._ The headings and captions used in this Agreement are for convenience only and shall not be deemed to affect in any way the language of the provisions to which they refer.

28. _Successors and Assigns._ This Agreement shall inure to the benefit of the Parties and their respective successors and assigns.

29. _Cooperation._ All Parties agree to cooperate fully and to execute any and all supplementary documents and to take all additional actions which are consistent with and which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

30. _Time is of the Essence._ Time is of the essence in the performance of this Agreement.

31. _Counterparts._ This Agreement may be executed in one or more counterparts, each of which will be considered an original, and all of which taken together will be considered one and the same instrument. The Parties further agree that the counterparts may be transmitted via facsimile and/or PDF attachments to e-mails and that the counterparts in those formats taken together constitute one and the same original, valid, and enforceable agreement.

_[signature page to follow]_

11

By their signatures below, the Parties enter into this Agreement as of the Effective Date.

MANCUSO MOTORSPORTS, INC.

By: _Jackie Cahon_

Its: _agent_

RYAN O. DAUBE, individually and as Trustee of
the Ryan O. Daube Revocable Trust

_____

FRANCIS ROTI

_____

ROBERT P. MANCUSO

_____

OWEN SCHNAPER

_____

NORTHSHORE AUTOSPORT, INC.

By: _____

Its: _____

3124 WEST LAKE AVENUE, LLC

By: _____

Its: _____

OWENS ARMY, LLC

By: _____

Its: _____

O'HARE AUTO BODY, LTD.

By: _____

Its: _____

12

By their signatures below, the Parties enter into this Agreement as of the Effective Date.

MANCUSO MOTORSPORTS, INC.

RYAN O. DAUBE, individually and as Trustee of
the Ryan Daube Revocable Trust

By: _____

Its: _____

FRANCIS ROTH

ROBERT P. MANCUSO

OWEN SCHNAPER

NORTHSHORE AUTOSPORT, INC.

3124 WEST LAKE AVENUE, LLC

By: _____

By: _____

Its: _President_

Its: _Comanager_

OWENS ARMY, LLC

O'HARE AUTO BODY, LTD.

By: _____

By: _____

Its: _Manager_

Its: _President_

12

By their signatures below, the Parties enter into this Agreement as of the Effective Date.

MANCUSO MOTORSPORTS, INC.

By:_____

Its:_____

RYAN O. DAUBE, individually and as Trustee of
the Ryan Daube Revocable Trust

_____

FRANCIS ROTI

_____

OWEN SCHNAPER

_____

ROBERT P. MANCUSO

_____

NORTHSHORE AUTOSPORT, INC.

By:_____

Its:_____

3124 WEST LAKE AVENUE, LLC

By:_____

Its:_____

OWENS ARMY, LLC

By:_____

Its:_____

O'HARE AUTO BODY, LTD.

By:_____

Its:_____

# EXHIBIT A

| No. | Year | Model | VIN |
|-----|------|-------|-----|
| 1 | 1978 | Ford Bronco | U15HLCF6647 |
| 2 | 1979 | International Scot II | J0062JGD45165 |
| 3 | 1986 | Mercedes-Benz 300 GD | WDB46023817050619 |
| 4 | 1991 | Jaguar XJS convertible | SAJTW4843MC176895 |
| 5 | 1980 | Mercedes-Benz 300 GD | WDB46031217022350 |

# EXHIBIT B

## ASSIGNMENT OF STOCK

THIS ASSIGNMENT is made by Robert P. Mancuso (hereinafter "Assignor").

FOR AND IN CONSIDERATION of the sum of One and 00/100 Dollars ($1.00) in hand paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns and transfers unto Ryan O. Daube as Trustee of the Ryan Daube Revocable Trust (hereinafter "Assignee"), 37.313 shares of Common Stock (the "Shares") of MANCUSO MOTORSPORTS, INC., an Illinois corporation ("Corporation").

Assignor represents and warrants that Assignor is the sole and absolute owner of the Shares and that the Shares are free and clear of any liens, pledges, collateral assignments or any other encumbrances of any kind and that hereafter Assignor will not own any shares of stock in the Corporation.

Assignor hereby irrevocably constitutes and appoints the Secretary of the Corporation as his attorney-in-fact to transfer the Shares on the books of the Corporation with full power of substitution in the premises.

IN WITNESS WHEREOF, Assignor has signed and delivered this Assignment on the date first written above.


_____
Robert P. Mancuso


Date: _____, 2023

## ASSIGNMENT OF STOCK

THIS ASSIGNMENT is made by Francis S. Roti (hereinafter "Assignor").

FOR AND IN CONSIDERATION of the sum of One and 00/100 Dollars ($1.00) in hand paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns and transfers unto Ryan O. Daube as Trustee of the Ryan Daube Revocable Trust (hereinafter "Assignee"), 186.5675 shares of Common Stock (the "Shares") of MANCUSO MOTORSPORTS, INC., an Illinois corporation ("Corporation").

Assignor represents and warrants that Assignor is the sole and absolute owner of the Shares and that the Shares are free and clear of any liens, pledges, collateral assignments or any other encumbrances of any kind and that hereafter Assignor will not own any shares of stock in the Corporation.

Assignor hereby irrevocably constitutes and appoints the Secretary of the Corporation as his attorney-in-fact to transfer the Shares on the books of the Corporation with full power of substitution in the premises.

IN WITNESS WHEREOF, Assignor has signed and delivered this Assignment on the date first written above.

_____

Francis S. Roti

Date: _____, 2023

## ASSIGNMENT OF STOCK

THIS ASSIGNMENT is made by Owen Schnaper (hereinafter "Assignor").

FOR AND IN CONSIDERATION of the sum of One and 00/100 Dollars ($1.00) in hand paid and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby assigns and transfers unto Ryan O. Daube as Trustee of the Ryan Daube Revocable Trust (hereinafter "Assignee"), 18.651 shares of Common Stock (the "Shares") of MANCUSO MOTORSPORTS, INC., an Illinois corporation ("Corporation").

Assignor represents and warrants that Assignor is the sole and absolute owner of the Shares and that the Shares are free and clear of any liens, pledges, collateral assignments or any other encumbrances of any kind and that hereafter Assignor will not own any shares of stock in the Corporation and that hereafter Assignor will not own any shares of stock in the Corporation.

Assignor hereby irrevocably constitutes and appoints the Secretary of the Corporation as his attorney-in-fact to transfer the Shares on the books of the Corporation with full power of substitution in the premises.

IN WITNESS WHEREOF, Assignor has signed and delivered this Assignment on the date first written above.


_____

Owen Schnaper

Date: _____

# EXHIBIT C

**CONSENT RESOLUTIONS
OF THE SHAREHOLDERS OF
MANCUSO MOTORSPORTS, INC.**

The undersigned, being all of the Shareholders of MANCUSO MOTORSPORTS, INC., an Illinois corporation ("Corporation"), pursuant to the Illinois Business Corporation Act of 1983, hereby waive any and all notices as provided by the laws of the State of Illinois, Articles of Incorporation or By-Laws of the Corporation, do hereby unanimously consent to and adopt the following resolutions to the same effect as if adopted at a duly convened meeting of the Shareholders.

RESOLVED, that the Corporation hereby consents to the assignment and transfer of the shares of the common stock of the Corporation from Francis S. Roti, Robert P. Mancuso, and Owen Schnaper to Ryan O. Daube as Trustee of the Ryan Daube Revocable Trust ("Trust"), as provided below; and

FURTHER RESOLVED, that the Secretary of the Corporation is hereby authorized and directed to record the following transfers on the books and records of the Corporation, to cancel stock certificates related hereto and to issue certificates representing the following transfers:

| | |
|---|---|
| Francis S. Roti to the Trust | 186.568 shares |
| Robert P. Mancuso to the Trust | 37.313 shares |
| Owen Schnaper to the Trust | 18.651 shares |

FURTHER RESOLVED, that the officers of the Corporation are hereby authorized and directed to execute any and all documents and do whatever acts are necessary and convenient to effectuate the intent of these resolutions.

[Signature page follows]

IN WITNESS WHEREOF, the undersigned, being all of the Shareholders entitled to vote, have executed, which may be in counterparts, these consent resolutions effective the date set forth below.

**SHAREHOLDERS**

_____

Robert Mancuso

_____

Frank Roti

_____

Ryan O. Daube, as Trustee of the
Ryan Daube Revocable Trust

_____

Owen Schnaper

Date: _____, 2023

2

# EXHIBIT D

## ASSIGNMENT OF MEMBERSHIP INTEREST

THIS ASSIGNMENT is made by ROBERT P. MANCUSO (hereinafter "Assignor") of all of his Membership Interests (25%) in 3124 WEST LAKE AVENUE, LLC, an Illinois limited liability company (hereinafter "Company") to Ryan O. Daube or his designee (hereinafter "Assignee").

FOR AND IN CONSIDERATION of the sum of TEN and 00/100 DOLLARS ($10.00), the sufficiency and receipt of which is hereby acknowledged by Assignee, Assignor hereby sells, assigns and transfers all of his Membership Interests in the Company to Assignee.

Assignor represents and warrants that Assignor is the sole and absolute owner of the Membership Interests assigned herein, that such is free and clear of any liens, pledges, collateral assignments or any other encumbrances of any kind, that this assignment constitutes a valid and binding obligation of Assignor, and that after the assignment, Assignee will not own any Membership Interests in the Company.

Assignor hereby irrevocably constitutes and appoints Assignee as his attorney-in-fact to assign the Membership Interests on the books of the Company with full power of substitution.

Assignee and the Company release, discharge and hold harmless Assignor from any and all past, present and future obligations that have or may in the future arise as a result of Assignor's ownership in the Company and Assignor's management of the Company, including, but not limited to, any acts taken by Assignor on behalf of the Company.

IN WITNESS WHEREOF, Assignor has signed and delivered this Assignment of Membership Interest to Assignee on the date first written above.


_____
Robert P. Mancuso, as Assignor

_____
Ryan O. Daube or his designee, as Assignee


Date: _____, 2023

## ASSIGNMENT OF MEMBERSHIP INTEREST

THIS ASSIGNMENT is made by OWENS ARMY, LLC, a Michigan limited liability company (hereinafter "Assignor") of all of his Membership Interests (25%) in 3124 WEST LAKE AVENUE, LLC, an Illinois limited liability company (hereinafter "Company") to Ryan O. Daube or his designee (hereinafter "Assignee").

FOR AND IN CONSIDERATION of the sum of TEN and 00/100 DOLLARS ($10.00), the sufficiency and receipt of which is hereby acknowledged by Assignee, Assignor hereby sells, assigns and transfers all of his Membership Interests in the Company to Assignee.

Assignor represents and warrants that Assignor is the sole and absolute owner of the Membership Interests assigned herein, that such is free and clear of any liens, pledges, collateral assignments or any other encumbrances of any kind, that this assignment constitutes a valid and binding obligation of Assignor, and that after the assignment, Assignee will not own any Membership Interests in the Company.

Assignor hereby irrevocably constitutes and appoints Assignee as his attorney-in-fact to assign the Membership Interests on the books of the Company with full power of substitution.

Assignee and the Company release, discharge and hold harmless Assignor from any and all past, present and future obligations that have or may in the future arise as a result of Assignor's ownership in the Company and Assignor's management of the Company, including, but not limited to, any acts taken by Assignor on behalf of the Company.

IN WITNESS WHEREOF, Assignor has signed and delivered this Assignment of Membership Interest to Assignee on the date first written above.


_____          _____
Owen Schnaper, as Manager of              Ryan O. Daube or his designee, as Assignee
Owens Army, LLC


Date: _____, 2023

## <u>ASSIGNMENT OF MEMBERSHIP INTEREST</u>

THIS ASSIGNMENT is made by FRANCIS S. ROTI (hereinafter "Assignor") of all of his Membership Interests (25%) in 3124 WEST LAKE AVENUE, LLC, an Illinois limited liability company (hereinafter "Company") to Ryan O. Daube or his designee (hereinafter "Assignee").

FOR AND IN CONSIDERATION of the sum of TEN and 00/100 DOLLARS ($10.00), the sufficiency and receipt of which is hereby acknowledged by Assignee, Assignor hereby sells, assigns and transfers all of his Membership Interests in the Company to Assignee.

Assignor represents and warrants that Assignor is the sole and absolute owner of the Membership Interests assigned herein, that such is free and clear of any liens, pledges, collateral assignments or any other encumbrances of any kind, that this assignment constitutes a valid and binding obligation of Assignor, and that after the assignment, Assignee will not own any Membership Interests in the Company.

Assignor hereby irrevocably constitutes and appoints Assignee as his attorney-in-fact to assign the Membership Interests on the books of the Company with full power of substitution.

Assignee and the Company release, discharge and hold harmless Assignor from any and all past, present and future obligations that have or may in the future arise as a result of Assignor's ownership in the Company and Assignor's management of the Company, including, but not limited to, any acts taken by Assignor on behalf of the Company.

IN WITNESS WHEREOF, Assignor has signed and delivered this Assignment of Membership Interest to Assignee on the date first written above.


_____                    _____

Francis S. Roti, as Assignor              Ryan O. Daube or his designee, as Assignee


Date: _____, 2023

# EXHIBIT E

## CONSENT RESOLUTIONS IN LIEU OF MEETING
## OF THE MEMBERS AND MANAGERS OF
## <u>3124 WEST LAKE AVENUE, LLC</u>

The undersigned, being all of the Managers of 3124 West Lake Avenue, LLC, an Illinois limited liability company ("Company") pursuant to the Illinois Limited Liability Company Act, as amended, and the 3124 West Lake Avenue, LLC Operating Agreement ("Operating Agreement"), hereby waive all notices as provided by the laws of the State of Illinois and the Operating Agreement, and do hereby consent to and adopt the following resolutions to the same effect as if adopted at a duly convened meeting of the Managers of the Company:

**RESOLVED**, that the Company hereby consents to and authorizes the assignment and transfer of the Membership Interests of the Company from Francis S. Roti, Robert P. Mancuso, and Owens Army, LLC to Ryan O. Daube or his designee as provided below; and

**FURTHER RESOLVED**, that any manager or authorized representative of the Company is hereby authorized and directed to record the following transfers on the books and records of the Company:

| | |
|---|---|
| Francis S. Roti to Ryan O. Daube or his designee | 25% Membership Interest |
| Robert P. Mancuso to Ryan O. Daube or his designee | 25% Membership Interest |
| Owens Army, LLC to Ryan O. Daube or his designee | 25% Membership Interest |

**FURTHER RESOLVED**, that Francis S. Roti and Owen Schnaper resign as Managers of the Company.

IN WITNESS WHEREOF, the undersigned being all of the Members and Managers of the Company have caused this Consent to be executed on the date set forth below.

_____
Francis S. Roti, as Member
and Manager

_____
Owen Schnaper, as Manager

_____
Robert P. Mancuso, as Member

_____
Owen Schnaper, as Manager of Owens
Army, LLC

_____
Ryan O. Daube, as Member

Date: _____, 2023

**Fill in this information to identify the case:**

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: __Norther_____ District of __Illinois____ ▾

Case number:  22-14513

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month:          December  16 - 31, 2022                    Date report filed:    01/24/2023
                                                                               MM / DD / YYYY

Line of business:  Auto Collision and repair                NAISC code:    _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                  Mancuso Motorsports Inc

Original signature of responsible party    *Jackie Cahan*

Printed name of responsible party      Jackie Cahan,

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Official Form 425C        Monthly Operating Report for Small Business Under Chapter 11

EXHIBIT
B
Blumberg No. 5118

Debtor Name  Mancuso Motorsports Inc                               Case number 22-14513

17. Have you paid any bills you owed before you filed bankruptcy?          ☐  ☑  ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☑  ☐  ☐

## → 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.                     $ 58,035.95

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C.*

    Report the total from *Exhibit C* here.                          $ 279,828.66

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D.*

    Report the total from *Exhibit D* here.                       − $ 230,223.99

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.    + $ 49,604.67

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.                  = $ 107,640.62

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**                                             $ 40,492.96
       *(Exhibit E)*                                                ordinary course

Debtor Name Mancuso Motorsports Inc                                    Case number 22-14513

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                    $  195,657.60

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                    31
27. What is the number of employees as of the date of this monthly report?                        31

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?       $  35,000.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?  $  35,000.00
30. How much have you paid this month in other professional fees?                                 $  0.00
31. How much have you paid in total other professional fees since filing the case?               $  0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* | – | *Column B* | = | *Column C* |
|---|---|---|---|---|---|
| | **Projected** | | **Actual** | | **Difference** |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. Cash receipts | $ 325,000.00 | – | $ 279,828.66 | = | $ 45,171.34 |
| 33. Cash disbursements | $ 357,156.00 | – | $ 230,223.99 | = | $ 126,932.00 |
| 34. Net cash flow | $ -32,156.00 | – | $ 49,604.67 | = | $ 81,760.66 |

35. Total projected cash receipts for the next month:                                       $ 350,000.00
36. Total projected cash disbursements for the next month:                                 – $ 344,280.00
37. Total projected net cash flow for the next month:                                      = $ 5,720.00

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.   Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.   Bank reconciliation reports for each account.

☑ 40.   Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.   Budget, projection, or forecast reports.

☐ 42.   Project, job costing, or work-in-progress reports.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: _Norther_____ District of _Illinois___ ▾

Case number: 22-14513 _____

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                    12/17

Month:  __January 31,2023__                    Date report filed:  __02/22/2023__
                                                                    MM / DD / YYYY

Line of business: Auto Collision and repair __                  NAISC code:  _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                 Mancuso Motorsports Inc _____

Original signature of responsible party  *Jackie Cahan* _____

Printed name of responsible party     Jackie Cahan, _____

### ▌1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Mancuso Motorsports Inc

Case number 22-14513

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☐ | ☑ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☑ | ☐ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ 107,640.02

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ 466,981.28

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, *checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month,* and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    – $ 418,534.13

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ 48,447.15

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    = $ 156,087.17

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    $ 89,321.06

    *(Exhibit E)*

Debtor Name Mancuso Motorsports Inc _____     Case number 22-14513 _____

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25. **Total receivables**                                                                               $ 205,526.10

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                               25
27. What is the number of employees as of the date of this monthly report?                                  25

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?      $        0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $        0.00
30. How much have you paid this month in other professional fees?                               $        0.00
31. How much have you paid in total other professional fees since filing the case?              $        0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A*<br>**Projected** | − | *Column B*<br>**Actual** | = | *Column C*<br>**Difference** |
|---|---|---|---|---|---|
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. Cash receipts | $ 350,000.00 | − | $ 466,981.28 | = | $ -116,981.8( |
| 33. Cash disbursements | $ 344,280.00 | − | $ 418,534.13 | = | $ -74,254.18 |
| 34. Net cash flow | $ 5,720.00 | − | $ 48,447.15 | = | $ 54,167.15 |

35. Total projected cash receipts for the next month:                                          $ 690,888.00
36. Total projected cash disbursements for the next month:                                    − $ 540,332.00
37. Total projected net cash flow for the next month:                                          = $ 150,556.00

Debtor Name  Mancuso Motorsports Inc                          Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☑ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

**Fill in this information to identify the case:**

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: _Norther_____ District of _Illinois____ ▾

Case number: 22-14513

☐ Check if this is an amended filing

Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11            12/17

Month:        February  28, 2023                     Date report filed:  03/17/2023
                                                                          MM / DD / YYYY
Line of business:  Auto Collision and repair              NAISC code:  _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:              Mancuso Motorsports Inc

Original signature of responsible party

Printed name of responsible party      Jackie Cahan,

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
|  | **If you answer No to any of the questions in lines 1-9, attach an explanation and label it Exhibit A.** |  |  |  |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
|  | **If you answer Yes to any of the questions in lines 10-18, attach an explanation and label it Exhibit B.** |  |  |  |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Mancuso Motorsports Inc                                Case number  22-14513

17. Have you paid any bills you owed before you filed bankruptcy?          ☐  ☑  ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☑  ☐  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**                              $ 156,087.17

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.                                $ 355,739.62

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.                               – $ 476,961.89

22. **Net cash flow**                                                    + $ 121,222.27

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**                            = $ 34,864.90

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**                                                    $ 100,798.45

    *(Exhibit E)*

Debtor Name Mancuso Motorsports Inc                              Case number 22-14513

 **4. Money Owed to You**

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25. **Total receivables**                                                                          $  200,500.11

    *(Exhibit F)*

**5. Employees**

26. What was the number of employees when the case was filed?                                       25
27. What is the number of employees as of the date of this monthly report?                          23

**6. Professional Fees**

28. How much have you paid this month in professional fees related to this bankruptcy case?         $        0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?  $        0.00
30. How much have you paid this month in other professional fees?                                   $        0.00
31. How much have you paid in total other professional fees since filing the case?                  $        0.00

**7. Projections**

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | **Projected** | – | **Actual** | = | **Difference** |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. Cash receipts | $ 690,888.00 | – | $ 355,739.62 | = | $ 335,148.38 |
| 33. Cash disbursements | $ 540,332.00 | – | $ 476,961.89 | = | $ 63,370.11 |
| 34. Net cash flow | $ 150,556.00 | – | $ -121,222.27 | = | $ 271,778.27 |

35. Total projected cash receipts for the next month:                                              $ 670,042.00
36. Total projected cash disbursements for the next month:                                        – $ 595,604.00
37. Total projected net cash flow for the next month:                                             = $ 74,438.00

Debtor Name  Mancuso Motorsports Inc _____  Case number 22-14513 _____

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☑ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

**Fill in this information to identify the case:**

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: _Norther_____ District of _Illinois___

Case number: 22-14513

☐ Check if this is an
amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                12/17

Month:       March 31, 2023                          Date report filed:  04/19/2023
                                                                         MM / DD / YYYY
Line of business:  Auto Collision and repair         NAISC code:  _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:              Mancuso Motorsports Inc

Original signature of responsible party  _____

Printed name of responsible party   Jackie Cahan,

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

17. Have you paid any bills you owed before you filed bankruptcy?           ☐  ☑  ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☑  ☐  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.                                                                $ 156,087.17

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.                    $ 682,483.60

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.                   – $ 606,293.68

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.      + $ 76,189.92

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.   = $ 232,277.09

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**                                      $ 129,062.24

*(Exhibit E)*

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25.  **Total receivables**                                                                  $   156,784.26

    *(Exhibit F)*

## 5. Employees

26.  What was the number of employees when the case was filed?                               25

27.  What is the number of employees as of the date of this monthly report?                  22

## 6. Professional Fees

28.  How much have you paid this month in professional fees related to this bankruptcy case?                     $      0.00

29.  How much have you paid in professional fees related to this bankruptcy case since the case was filed?        $      0.00

30.  How much have you paid this month in other professional fees?                                               $      0.00

31.  How much have you paid in total other professional fees since filing the case?                              $      0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | *Column A*<br>**Projected** | — | *Column B*<br>**Actual** | = | *Column C*<br>**Difference** |
|---|---|---|---|---|---|
|  | Copy lines 35-37 from the previous month's report. |  | Copy lines 20-22 of this report. |  | Subtract Column B from Column A. |
| 32.  Cash receipts | $ 670,042.00 | — | $ 682,483.60 | = | $ -12,441.60 |
| 33.  Cash disbursements | $ 595,604.00 | — | $ 606,293.68 | = | $ -10,689.68 |
| 34.  Net cash flow | $ 74,438.00 | — | $ 76,189.92 | = | $ -1,751.92 |

35.  Total projected cash receipts for the next month:                               $   486,103.00

36.  Total projected cash disbursements for the next month:                        − $   460,648.00

37.  Total projected net cash flow for the next month:                             = $    25,455.00

Debtor Name  Mancuso Motorsports Inc                                        Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑  39.  Bank reconciliation reports for each account.

☑  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: _Norther_____ District of _Illinois____ ▼

Case number: 22-14513_____

☐ Check if this is an
  amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month:          April 30, 2023                    Date report filed:  05/17/2023
                                                                     MM / DD / YYYY
Line of business:  Auto Collision and repair      NAISC code:        _____

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party:              Mancuso Motorsports Inc

Original signature of responsible party

Printed name of responsible party     Jackie Cahan,

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer _No_ to any of the questions in lines 1-9, attach an explanation and label it _Exhibit A._** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer _Yes_ to any of the questions in lines 10-18, attach an explanation and label it _Exhibit B._** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Mancuso Motorsports Inc

Case number 22-14513

17. Have you paid any bills you owed before you filed bankruptcy?  ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?  ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 232,277.09

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 442,742.02

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 544,966.50

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ -102,224.44

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

= $ 130,052.61

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

$ 156,761.99

(Exhibit E)

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25. **Total receivables**                                                                    $  279,960.80

   *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                      25
27. What is the number of employees as of the date of this monthly report?                         20

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?     $      0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?  $      0.00
30. How much have you paid this month in other professional fees?                               $      0.00
31. How much have you paid in total other professional fees since filing the case?             $      0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 486,103.00 | − | $ 442,742.02 | = | $ 40,360.98 |
| 33. **Cash disbursements** | $ 460,648.00 | − | $ 560,869.07 | = | $ -100,221.06 |
| 34. **Net cash flow** | $ 25,455.00 | − | $ -118,127.05 | = | $ -59,860.09 |

35. Total projected cash receipts for the next month:                                    $  526,853.00

36. Total projected cash disbursements for the next month:                              − $  680,772.00

37. Total projected net cash flow for the next month:                                    = $ -153,919.00

---

Debtor Name  Mancuso Motorsports Inc                                Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☑ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

Fill in this information to identify the case:

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: _Norther_____ District of _Illinois____ ☑

Case number: 22-14513

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11                    12/17

Month:  May

Date report filed: 06/20/2023
MM / DD / YYYY

Line of business: Auto Collision and repair

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                    Mancuso Motorsports Inc

Original signature of responsible party    *Jackie Cahan*

Printed name of responsible party    Jackie Cahan,

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

| | Yes | No | N/A |
|---|---|---|---|
| **If you answer No to any of the questions in lines 1-9, attach an explanation and label it Exhibit A.** | | | |
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| **If you answer Yes to any of the questions in lines 10-18, attach an explanation and label it Exhibit B.** | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name _Mancuso Motorsports Inc_____   Case number _22-14513_____

17. Have you paid any bills you owed before you filed bankruptcy?   ☐ ☑ ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.   $ 130,052.61

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.   $ 654,377.41

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.   − $ 469,030.94

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.   + $ 185,346.47

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.   = $ 315,399.08

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**   $ 105,383.60

    *(Exhibit E)*

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

 **4. Money Owed to You**

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                              $ 101,171.40

    *(Exhibit F)*

**5. Employees**

26. What was the number of employees when the case was filed?                     25

27. What is the number of employees as of the date of this monthly report?        20

**6. Professional Fees**

28. How much have you paid this month in professional fees related to this bankruptcy case?        $ 10,335.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ 10,335.00

30. How much have you paid this month in other professional fees?                                  $ 0.00

31. How much have you paid in total other professional fees since filing the case?                 $ 0.00

**7. Projections**

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | Column B | Column C |
|---|---|---|---|
|  | Projected | − Actual | = Difference |
|  | Copy lines 35-37 from the previous month's report. | Copy lines 20-22 of this report. | Subtract Column B from Column A. |
| 32. Cash receipts | $ 526,853.00 | − $ 654,377.41 | = $ -127,524.00 |
| 33. Cash disbursements | $ 680,772.00 | − $ 469,030.94 | = $ 211,741.06 |
| 34. Net cash flow | $ -153,919.00 | − $ 185,346.47 | = $ -339,265.00 |

35. Total projected cash receipts for the next month:                              $ 411,626.00

36. Total projected cash disbursements for the next month:                       − $ 392,982.00

37. Total projected net cash flow for the next month:                            = $ 18,644.00

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

**Fill in this information to identify the case:**

Debtor Name __Mancuso Motorsports Inc__

United States Bankruptcy Court for the: __Norther_____ District of __Illinois__ ▾

Case number: __22-14513_____

☐ Check if this is an
amended filing

## Official Form 425C

### Monthly Operating Report for Small Business Under Chapter 11                12/17

Month: __June___

Date report filed: __07/16/2023__
MM / DD / YYYY

Line of business: __Auto Collision and repair__

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                __Mancuso Motorsports Inc__

Original signature of responsible party    *Jackie Cahan*

Printed name of responsible party      __Jackie Cahan,__

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

*If you answer No to any of the questions in lines 1-9, attach an explanation and label it Exhibit A.*

| | Yes | No | N/A |
|---|---|---|---|
| 1. Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. Have you timely paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| *If you answer Yes to any of the questions in lines 10-18, attach an explanation and label it Exhibit B.* | | | |
| 10. Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Mancuso Motorsports Inc                                    Case number  22-14513

17. Have you paid any bills you owed before you filed bankruptcy?                      ☐  ☑  ☐
18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?    ☑  ☐  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous
month. If this is your first report, report the total cash on hand as of the date of the filing of this case.                  $ 315,399.08

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all
cash received even if you have not deposited it at the bank, collections on
receivables, credit card deposits, cash received from other parties, or loans, gifts, or
payments made by other parties on your behalf. Do not attach bank statements in
lieu of *Exhibit C*.

Report the total from *Exhibit C* here.                                          $  376,852.48

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the
date paid, payee, purpose, and amount. Include all cash payments, debit card
transactions, checks issued even if they have not cleared the bank, outstanding
checks issued before the bankruptcy was filed that were allowed to clear this month,
and payments made by other parties on your behalf. Do not attach bank statements
in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.                                    – $  464,600.28

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.                         + $  -87,747.80
This amount may be different from what you may have calculated as *net profit*.

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.                                   = $  227,651.28

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

This amount may not match your bank account balance because you may have outstanding checks that
have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but
have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the
purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**                                                              $  120,017.42

     *(Exhibit E)*

Debtor Name  Mancuso Motorsports Inc                                Case number 22-14513

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you
have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*.
Identify who owes you money, how much is owed, and when payment is due. Report the total from
*Exhibit F* here.

25.  **Total receivables**                                                         $  80,274.48

     *(Exhibit F)*

## 5. Employees

26.  What was the number of employees when the case was filed?                      25
27.  What is the number of employees as of the date of this monthly report?         20

## 6. Professional Fees

28.  How much have you paid this month in professional fees related to this bankruptcy case?      $  0.00
29.  How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $  10,335.00
30.  How much have you paid this month in other professional fees?                  $  0.00
31.  How much have you paid in total other professional fees since filing the case?  $  0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month.
Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | − | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32.  Cash receipts | $ 411,626.00 | − | $ 376,852.48 | = | $ 34,773.52 |
| 33.  Cash disbursements | $ 392,982.00 | − | $ 464,600.28 | = | $ -71,618.28 |
| 34.  Net cash flow | $ 18,644.00 | − | $ -87,747.80 | = | $ -36,844.76 |

35.  Total projected cash receipts for the next month:                             $ 403,811.00
36.  Total projected cash disbursements for the next month:                      − $ 385,666.00
37.  Total projected net cash flow for the next month:                           = $ 18,185.00

Debtor Name Mancuso Motorsports Inc _____     Case number 22-14513 _____

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39.  Bank reconciliation reports for each account.

☐ 40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41.  Budget, projection, or forecast reports.

☐ 42.  Project, job costing, or work-in-progress reports.

**Fill in this information to identify the case:**

Debtor Name  Mancuso Motorsports Inc

United States Bankruptcy Court for the: _Norther_____ District of _Illinois___ ▢

Case number: 22-14513_____

▢ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month:          July  31, 2023                           Date report filed:  08/17/2023
                                                                            MM / DD / YYYY
Line of business: Auto Collision and repair                NAISC code:   _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:              Mancuso Motorsports Inc

Original signature of responsible party   *Jackie Cahan*

Printed name of responsible party     Jackie Cahan,

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  |  | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer _No_ to any of the questions in lines 1-9, attach an explanation and label it _Exhibit A_.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ▢ | ▢ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ▢ | ▢ |
| 3. | Have you paid all of your bills on time? | ☑ | ▢ | ▢ |
| 4. | Did you pay your employees on time? | ☑ | ▢ | ▢ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ▢ | ▢ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ▢ | ▢ |
| 7. | Have you timely filed all other required government filings? | ☑ | ▢ | ▢ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ▢ | ▢ |
| 9. | Have you timely paid all of your insurance premiums? | ☑ | ▢ | ▢ |
| | **If you answer _Yes_ to any of the questions in lines 10-18, attach an explanation and label it _Exhibit B_.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ▢ | ☑ | ▢ |
| 11. | Have you sold any assets other than inventory? | ▢ | ☑ | ▢ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ▢ | ☑ | ▢ |
| 13. | Did any insurance company cancel your policy? | ▢ | ☑ | ▢ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ▢ | ☑ | ▢ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ▢ | ☑ | ▢ |
| 16. | Has anyone made an investment in your business? | ▢ | ☑ | ▢ |

Debtor Name  Mancuso Motorsports Inc                    Case number  22-14513

---

17. Have you paid any bills you owed before you filed bankruptcy?          ☐  ☑  ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?    ☑  ☐  ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 227,651.28

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 326,326.04

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

– $ 313,583.48

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $  12,742.56

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

= $ 240,393.84

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**          $ 136,002.11

*(Exhibit E)*

---

Debtor Name  Mancuso Motorsports Inc                                    Case number  22-14513

### 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25.  **Total receivables**                                                                          $    43,319.03

     *(Exhibit F)*

### 5. Employees

26.  What was the number of employees when the case was filed?                          25

27.  What is the number of employees as of the date of this monthly report?               21

### 6. Professional Fees

28.  How much have you paid this month in professional fees related to this bankruptcy case?        $    0.00

29.  How much have you paid in professional fees related to this bankruptcy case since the case was filed?    $    0.00

30.  How much have you paid this month in other professional fees?                        $    0.00

31.  How much have you paid in total other professional fees since filing the case?            $    0.00

### 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
| | **Projected** | — | **Actual** | = | **Difference** |
| | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32.  **Cash receipts** | $ 403,811.00 | — | $ 326,326.04 | = | $ 77,484.96 |
| 33.  **Cash disbursements** | $ 385,666.00 | — | $ 313,583.48 | = | $ 72,082.52 |
| 34.  **Net cash flow** | $ 18,145.00 | | $ 12,742.56 | = | $ -59,860.09 |

35.  Total projected cash receipts for the next month:                                    $ 526,853.00

36.  Total projected cash disbursements for the next month:                            - $ 680,772.00

37.  Total projected net cash flow for the next month:                                  = $ -153,919.00

Debtor Name  Mancuso Motorsports Inc                                    Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑ 39. Bank reconciliation reports for each account.

☑ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.

**Fill in this information to identify the case:**

Debtor Name __Mancuso Motorsports Inc__

United States Bankruptcy Court for the: __Norther_____ District of __Illinois__ ☐

Case number: __22-14513_____

☐ Check if this is an
   amended filing

## Official Form 425C

# Monthly Operating Report for Small Business Under Chapter 11          12/17

Month: _____August  31, 2023____

Line of business: __Auto Collision and repair__

Date report filed: __09/15/2023__
                     MM / DD / YYYY

NAISC code: _____

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury
that I have examined the following small business monthly operating report and the accompanying
attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party:                    Mancuso Motorsports Inc

Original signature of responsible party  *Jackie Cahan*

Printed name of responsible party     Jackie Cahan,

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|:---:|:---:|:---:|
| | **If you answer _No_ to any of the questions in lines 1-9, attach an explanation and label it _Exhibit A_.** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☑ | ☐ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☑ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☑ | ☐ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☑ | ☐ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☑ | ☐ | ☐ |
| 9. | Have you paid all of your insurance premiums? | ☑ | ☐ | ☐ |
| | **If you answer _Yes_ to any of the questions in lines 10-18, attach an explanation and label it _Exhibit B_.** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Debtor Name  Mancuso Motorsports Inc

Case number 22-14513

17. Have you paid any bills you owed before you filed bankruptcy? ☐ ☑ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? ☑ ☐ ☐

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

$ 240,393.84

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here.

$ 336,426.88

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here.

− $ 381,033.20

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*.

+ $ -44,606.32

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

= $ 195,787.52

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

*(Exhibit E)*

$ 129,309.89

Debtor Name  Mancuso Motorsports Inc                          Case number  22-14513

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy.  Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                          $  246,643.87

     *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?                                    25

27. What is the number of employees as of the date of this monthly report?                       21

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?        $  0.00

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $  0.00

30. How much have you paid this month in other professional fees?                                  $  0.00

31. How much have you paid in total other professional fees since filing the case?                 $  0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | **Projected** | — | **Actual** | = | **Difference** |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ 526,853.00 | — | $ 336,426.88 | = | $ 190,426.12 |
| 33. **Cash disbursements** | $ 680,772.00 | — | $ 381,033.20 | = | $ 299,738.80 |
| 34. **Net cash flow** | $ -153,919.00 | — | $ -44,606.32 | = | $ 109,312.68 |

35. Total projected cash receipts for the next month:                                            $  411,193.00

36. Total projected cash disbursements for the next month:                                      − $  383,082.00

37. Total projected net cash flow for the next month:                                            = $  28,111.00

Debtor Name  Mancuso Motorsports Inc                                        Case number 22-14513

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☑  38.  Bank statements for each open account (redact all but the last 4 digits of account numbers).

☑  39.  Bank reconciliation reports for each account.

☑  40.  Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐  41.  Budget, projection, or forecast reports.

☐  42.  Project, job costing, or work-in-progress reports.

### Escrow Agreement

THIS ESCROW AGREEMENT (this **"Escrow Agreement"**), dated as of May  , 2023, is between Ryan Daube ("Funding Party") and SWK Attorneys LLC, an Illinois Limited Company as escrow agent and together with  Funding Party sometimes referred to as the **"Parties"**.

### RECITALS:

A.      WHEREAS, Funding Party is a party to that certain proposed Chapter 11 Plan of Reorganization respecting Case Number 22-14513 United States Bankruptcy Court, Northern District of Illinois, Eastern Division (the "**Plan**") for certain assets of Debtor, Mancuso Motorsports, LLC ("**Property**") and

B.      WHEREAS, Funding Party desires to establish an escrow with Escrow Agent (as hereinafter defined) to secure Funding Party's obligation pursuant to the Plan; and

C.      WHEREAS, Funding Party desires to appoint SWK Attorneys LLC ("**Escrow Agent**") as the escrow agent pursuant to this Escrow Agreement, and Escrow Agent is willing to act as escrow agent hereunder.

D.      WHEREAS, Escrow Agent has agreed to hold and disburse the funds pursuant to the terms of this Escrow Agreement.

NOW THEREFORE, in consideration of the covenants and agreements contained in this Escrow Agreement, and intending to be legally bound, the parties agree as follows:

### AGREEMENT

### ARTICLE I
### APPOINTMENT OF ESCROW AGENT

1.1      The Parties appoint the Escrow Agent to act as escrow agent, and the Escrow Agent agrees to serve as escrow agent, upon the terms and conditions of this Escrow Agreement.

### ARTICLE II
### ESCROW

2.1      Escrow. Funding Party expressly confirms that it has instructed Escrow Agent to fund an escrow under this Escrow Agreement by directing Seven Hundred Fifty Thousand Dollars ($750,000) to be paid to Escrow Agent ("**Escrow Funds**").  The Escrow Funds shall be deposited by Escrow Agent into its client trust account (the "**Funding Account**").

2.2      Disbursement of Escrow Funds. Escrow Agent shall only disburse the Escrow Funds as follows:

2.3.1 Funding Party's Request. From and after the entry of a Final Order confirming the Plan of Reorganization ("**Final Order**") in case number 22-14513 and Funding Party has delivered to Escrow Agent a direction for disbursement of funds (the "**Disbursement Request**") from the Funding Account, Escrow Agent shall disburse such funds pursuant to the final Order and the instructions of Scott Clar,



EXHIBIT

Counsel for Mancuso Motorsports, the Debtor. The Disbursement Request shall state the amount of Escrow Funds to the entity or person which is entitled to be paid.

## ARTICLE III
## LIABILITY OF ESCROW AGENT

3.1    Liability of Escrow Agent. Escrow Agent shall have no liability or obligation with respect to the Escrow Funds except for Escrow Agent's, or its directors', officers' or employees' willful misconduct or gross negligence. Escrow Agent's sole responsibility shall be for the safekeeping, and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by the person or parties purporting to sign the same and to conform to the provisions of this Escrow Agreement. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, any account in which Escrow Funds is deposited, this Escrow Agreement or the Contract, or to appear in, prosecute or defend any such legal action or proceeding.

3.2    Authorization of Escrow Agent. The Escrow Agent is authorized and instructed to comply with orders issued or process entered by any court with respect to the Escrow Funds, without determination by the Escrow Agent of such court's jurisdiction in the matter. If any portion of the Escrow Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

3.3    Indemnification of Escrow Agent. Seller and Buyer hereby agree jointly and severally to indemnify and hold harmless the Escrow Agent and its directors, officers and employees from and against any and all losses, liabilities, expenses, claims and demands (including reasonable attorneys' fees and expenses) arising out of or in connection with the performance of the Escrow Agent's obligations in accordance with the provisions of this Escrow Agreement, except for the Escrow Agent's or its directors', officers' or employees' gross negligence or willful misconduct. The obligations of Buyer and Seller under this Section shall survive any termination of this Escrow Agreement.

## ARTICLE IV
## MISCELLANEOUS

4.1    Assignment; Successors and Assigns; Third Parties. Except as otherwise provided herein, neither Buyer nor Seller shall convey, assign or otherwise transfer any of its rights or obligations under this Escrow Agreement without the express written consent of the other party. Any conveyance, assignment or other transfer of any of Escrow Agent's rights and obligations under this Escrow

Agreement shall require express written consent of both Buyer and Seller.  This Escrow Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.  This Escrow Agreement is not intended to benefit and shall not run to the benefit of or be enforceable by, any other person or entity other than the parties hereto and their successors and permitted assigns.

4.2 <u>Entire Agreement</u>.  This Escrow Agreement and the Contract set forth all of the promises, covenants, agreements, conditions and undertakings between the parties hereto with respect to the subject matter hereof and supersede all prior or contemporaneous agreements and understandings, negotiations, inducements or conditions, express or implied, oral or written.  In the event of any direct conflict of the terms of this Escrow Agreement with the terms of the Contract, the terms of the Contract shall control and prevail.

4.3 <u>Severability</u>.  If a provision of this Escrow Agreement is deemed to be contrary to law, that provision will be deemed separable from the remaining provisions of this Escrow Agreement, and will not affect the validity, interpretation or effect of the other provisions of either this Escrow Agreement or any agreement executed pursuant to it or the application of that provision to other circumstances not contrary to law.

4.4 <u>Notices</u>.  Any notice, request, demand, waiver, consent, approval or other communication which is required or permitted hereunder will be in writing and will be deemed given (a) on the date established by the sender as having been delivered personally, (b) on the date delivered by a private courier as established by the sender by evidence obtained from the courier, or (c) on the date sent by facsimile or email, with confirmation of transmission, if sent during normal business hours of the recipient, if not, then on the next business day.  Notice by email shall be confirmed by return email from the addressee. Such communications, to be valid, must be addressed as follows:

| If to Funding Party, to: | with copy to: |
|---|---|
| Ryan Daube | SWK Attorneys LLC |
| ~~10 Devonshire Lane~~ 308 Hamilton Court | 500 Skokie Blvd., Suite 600 |
| Lincolnshire, IL  60069 | Northbrook, Illinois 60062 |
| Attn:  Jackie Cahan | Attn:  Allen Shapiro |
| Email: jackie.cahan@peregrade.com | Email: ashapiro@swkattorneys.com |

or to such other address or to the attention of such person or persons as the recipient party has specified by prior written notice to the sending party (or in the case of counsel, to such other readily ascertainable business address as such counsel may hereafter maintain).  If more than one method for sending notice as set forth above is used, the earliest notice date established as set forth above will control.

If to Escrow Agent:

SWK Attorneys LLC
500 Skokie Blvd., Suite 600
Northbrook, Illinois 60062
Attn: Allen Shapiro
Email: ashapiro@swkattorneys.com

4.5     Expenses.  Except as otherwise provided herein, each party shall be responsible for its own costs and expenses with respect to matters involving this Escrow Agreement.

4.6     Governing Law.   This Escrow Agreement shall be governed by and construed in accordance with the laws of the State of Illinois. Exclusive venue shall be in Cook County, Illinois.

4.7     Execution in Counterparts, Electronic Mail and Fax.  This Agreement may be executed in several counterparts.  All counterparts so executed shall constitute one agreement and shall be binding on all parties, even though all the parties did not sign the original or the same counterpart signature page. Hand signatures transmitted by fax or electronic mail such as PDF are also permitted as binding signatures to this Agreement.

4.8     Captions.  The captions herein are included for convenience of reference only and shall be ignored in the construction and interpretation hereof.

4.9     Attorneys' Fees.  If any legal action is brought for the enforcement of this Escrow Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding (together with costs of enforcing any judgments or rulings), in addition to any other relief to which it may be entitled.  In all other matters arising hereunder, each party shall bear its own attorneys' fees.

4.10    Further Assurances.  Each party to this Escrow Agreement, at the reasonable request of another party hereto, shall execute and deliver such other instruments and do and perform such other acts and things as may be necessary or desirable for effecting completely the consummation of this Escrow Agreement and the transactions contemplated hereby.

4.11    Recitals Incorporated.  The foregoing recitals are hereby incorporated within and made an integral part of this Escrow Agreement as if fully set forth herein.

4.12    No Waiver.  No failure on the part of Buyer or Seller at any time to require the performance by the other of any provision of this Escrow Agreement shall in any way affect the party's rights to require such performance, nor shall any waiver by any party of any provision hereof be taken or held to be a waiver of any other provision hereof.

[SIGNATURE PAGE FOLLOWS]

<u>Signature page to Escrow Agreement.</u>

**Funding Party:**

*Ryan Daube*

Ryan Daube
Individually

**ESCROW AGENT:**

**SWK Attorneys LLC,**
an Illinois limited liability company

By: _____

Its: one of its
Managers

**CASH FLOW**

Year
Month
Qtr

| | 2023 FY | 2024 FY | 2025 FY | 2026 FY | 2027 FY |
|---|---|---|---|---|---|
| **OPERATING ACTIVITIES** | | | | | |
| Net Income | 329,626 | 662,029 | 824,517 | 988,715 | 1,143,799 |
| Adjustments to reconcile Net Income to Net Cash provided by operations: | | | | | |
| 1100 Accounts Receivable | (14,911) | (35,475) | (63,001) | (50,111) | (17,900) |
| 1300 Inventory | 0 | 0 | 0 | 0 | 0 |
| 1400 Other Current Assets | 0 | 0 | 0 | 0 | 0 |
| 1402 Prepaid Insurance | 0 | 0 | 0 | 0 | 0 |
| 1403 Prepaid Core Charges | 0 | 0 | 0 | 0 | 0 |
| 1404 Prepaid Expenses | 0 | 0 | 0 | 0 | 0 |
| 1409 NSF Returned Checks | 0 | 0 | 0 | 0 | 0 |
| WIP - Work in Progress | (66,760) | 0 | 0 | 0 | 0 |
| Depreciation Expense | 51,219 | 61,463 | 61,463 | 61,463 | 61,463 |
| 2001 Accounts Payable | (432,053) | 109,575 | 154,410 | 113,309 | 83,949 |
| 2001.4 MCC AMEX 1003] 2043 | 0 | 0 | 0 | 0 | 0 |
| MARLENE(1052) | 0 | 0 | 0 | 0 | 0 |
| MATT (2043) | 0 | 0 | 0 | 0 | 0 |
| 2201 Payroll Liabilities | 0 | 0 | 0 | 0 | 0 |
| 2400 Sales Tax Payable | 0 | 0 | 0 | 0 | 0 |
| 2403 Customer Deposits | 0 | 0 | 0 | 0 | 0 |
| 2405 Customer Refunds | 0 | 0 | 0 | 0 | 0 |
| 2407 Illinois Department of Revenue Payable - 17 | 0 | 0 | 0 | 0 | 0 |
| 2800 Accrued Payroll | 0 | 0 | 0 | 0 | 0 |
| Total Adjustments to reconcile Net Income to Net Cash provided by operations | (462,504) | 135,564 | 152,873 | 124,661 | 127,512 |
| Net cash provided by operating activities | (132,878) | 797,593 | 977,390 | 1,113,376 | 1,271,311 |
| **INVESTING ACTIVITIES** | | | | | |
| Furniture & Fixtures | 0 | 0 | 0 | 0 | 0 |
| Machinery Equipment | 0 | 0 | 0 | 0 | 0 |
| Truck and Trailer | 0 | 0 | 0 | 0 | 0 |
| Computer Equipment | 0 | 0 | 0 | 0 | 0 |
| Leasehold Improvements | 0 | 0 | 0 | 0 | 0 |
| Net cash provided by investing activities | 0 | 0 | 0 | 0 | 0 |
| **FINANCING ACTIVITIES** | | | | | |
| Opening Balance Equity | 1,000,000 | 0 | 0 | 0 | 0 |
| Equity Investment | 0 | 0 | 0 | 0 | 0 |
| Net cash provided by financing activities | 1,000,000 | 0 | 0 | 0 | 0 |
| Beginning Cash | 123,532 | 990,654 | 1,788,247 | 2,765,636 | 3,879,013 |
| Change in Cash | 867,122 | 797,593 | 977,390 | 1,113,376 | 1,271,311 |
| Ending Cash | 990,654 | 1,788,247 | 2,765,636 | 3,879,013 | 5,150,324 |



Blumberg No. 5118

EXHIBIT